**G. H. SIMMS and F. E. Currell, a co-partnership doing business as Drifting Dunes Motel, Plaintiffs in Error,**

**v.**

**T. G. HOBBS, Defendant in Error.**

**No. 40674.**

Supreme Court of Oklahoma.

Jan. 18, 1966.

Motion to Amend Opinion Denied
Feb. 28, 1966.

Tom Finney, Idabel, for plaintiffs in error.

Ed Shipp, Idabel, for defendant in error.

BERRY, Justice.

The sole issue involved in this appeal is whether a personal judgment rendered in the court of another state, based upon substituted service upon an Oklahoma resident under a "long-arm" statute authorizing such service, is enforceable in this jurisdiction.

In 1959 the State of New Mexico adopted this statute (Laws 1959, Ch. 153), NMA 1953, Section 21-3-16, which provides:

"21-3-16. Personal service of process outside state—Business transacted in state—Operation of motor vehicle upon state highway—Tort committed within state—Insurance contract.—A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

"(1) The transaction of any business within this state;

"(2) The operation of a motor vehicle upon the highways of this state;

"(3) The commission of a tortious act within this state; or

"(4) Contracting to insure any person, property or risk located within this state at the time of contracting.

"B. Service of process may be made upon any person subject to the jurisdiction of the courts of this state under this section by personally serving the summons upon the defendant outside this state and such service has the same

force and effect as though service had been personally made within this state.

"C. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.

"D. Nothing contained in this section limits or affects the right to serve any process in any other manner now or hereafter provided by law."

The factual background is uninvolved and appears in the record by stipulation. Plaintiffs in error, hereafter called plaintiffs, were a partnership doing business as Drifting Dunes Motel in Clovis, New Mexico at all times material to this controversy. Defendant, an Oklahoma resident, went to New Mexico in the fall of 1960. On November 28, 1960, defendant entered into a written contract for purchase of this motel from plaintiffs for $325,000.00, and as part of such transaction executed and delivered for escrow his check for $5,000.00 earnest money. Defendant, a resident of Idabel, Oklahoma, thereafter returned home, and for reasons known to himself, stopped payment upon the check.

On February 16, 1961, plaintiffs filed suit in the District Court (Curry County) of New Mexico, alleging the foregoing matters, defendant's breach of the written contract and dishonor of the check; that upon execution of the purchase contract plaintiffs had taken this property off the market although there were others ready, willing and able to purchase; as a result plaintiffs had suffered $3,500.00 damages because of defendant's failure to comply with the contract. Plaintiffs asked judgment for amount of earnest money, damages and costs. Summons issued out of the New Mexico court, directed to the Sheriff of McCurtain County, Oklahoma, and was served upon defendant, who neither appeared nor filed pleading in the action. On March 24, 1961, the foreign District Court, based upon plaintiffs' certificate of default, rendered judgment for plaintiffs as prayed.

On May 16, 1961, plaintiffs sued defendant in the District Court of McCurtain County, alleging this judgment was in force and effect, demand for payment having been made which remained unsatisfied; that such judgment was not subject to the Intangible Tax Law. The New Mexico judgment, properly authenticated and certified, was pleaded as part of the petition wherein plaintiffs sought judgment against defendant.

After disposition of preliminary pleadings and overruling of the demurrer to the petition, defendant answered admitting rendition of the judgment sued upon but affirmatively alleged he had never been a resident of New Mexico and neither appeared nor authorized anyone to appear in his behalf in any action there; that he never was served personally with summons in New Mexico, and the purported service in Oklahoma did not confer personal jurisdiction against defendant and the purported judgment entered upon such service was void.

By stipulation the parties agreed the statute was as above quoted; transcript of the New Mexico proceedings could be introduced and considered as evidence in determining issues of law and fact; that the parties and their residences were as alleged, and the only service upon defendant was in McCurtain County; defendant made no appearance in New Mexico; both the contract and the earnest money check were executed and delivered in New Mexico; an authenticated copy of the summons and return could be introduced and considered by the court in determining issues of law and fact.

At the trial Hobbs testified he was the defendant in the action wherein this judgment was rendered and same had not been paid; he had been a resident of Oklahoma for many years, never had been a resident of New Mexico, was not in the State when the action was filed, or at any time since that date; had not appeared, or authorized any appearance in his behalf, and had not been served with summons in New Mexico.

After hearing the case the trial court took the matter under advisement and on March 22, 1963, entered judgment holding that as a matter of law plaintiffs were not entitled to recover.

 Plaintiffs' position is that the only issue involves the constitutionality of the New Mexico statute, supra, fixing jurisdiction in the courts of that State, in specified causes of action, under process served outside the State. Plaintiffs urge that we apply the rule that where a judgment entered by a foreign court of general jurisdiction is relied upon and the duly authenticated record is produced in evidence, it is presumed the court rendering the judgment had jurisdiction of the parties and the subject matter, absent proof or a contrary showing by the record. Allen v. Allen, 201 Okl. 442, 209 P.2d 172, 14 A.L.R.2d 216. Such foreign judgment is not open to re-examination, either upon the merits or from voidable irregularities, by this Court. Thompson v. William Ede Co., 187 Okl. 469, 103 P.2d 530. However, this Court can exercise jurisdiction to inquire into a foreign judgment for jurisdictional defects on the face of the record without regard to requirements of full faith and credit. Lee v. Franklin, 171 Okl. 70, 40 P.2d 257.

Upon this basis of their argument, above summarized, plaintiffs next point out that the statute, supra, has been declared constitutional by the Supreme Court of New Mexico. See Melfi v. Goodman, 69 N.M. 488, 368 P.2d 582. Thus plaintiffs submit, as conclusive and decisive of the issue on appeal, that the statute involved is a constitutional enactment, derived from exercise of legislative authority, and is not violative of the due process clause (Fourteenth Amendment) of the United States Constitution.

 Although recognizing the correctness of the rules announced in the cases cited by plaintiffs, it appears that this argument tends to oversimplify the problem. This seems true particularly in view of other decisions which forcefully declare that a separate action in our own courts may provide the proper vehicle for questioning the jurisdiction of the court of a foreign state. And, questions concerning a foreign court's jurisdiction of the cause of action may be reached by collateral attack, even after a defendant has entered appearance in the foreign forum. Brasier v. Brasier, 200 Okl. 689, 200 P.2d 427, and authorities there cited. In the present appeal no issue is raised, and we do not consider the effect of fraud practiced by the successful party in procuring a judgment in a foreign forum, which then provides the cause of action asserted in our Court.

Defendant's position is that the long recognized rule of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, denying validity to an in personam judgment rendered against a non-resident upon substituted service by a court in another state, remains settled law and is controlling here. This rule, as expressed by our Court, is stated in Jacobson v. Russell, 142 Okl. 181, 286 P. 299:

"1. Where a personal judgment for money is rendered in the courts of another state against a resident of this state who has not been served with process within the state where the judgment is rendered, and it appears from the record that jurisdiction of the person of the defendant was not obtained in the proceeding in which the judgment was rendered, such judgment is invalid and will not be enforced in this state.

"2. In order to entitle a personal judgment for money, rendered against a citizen of this state, in a foreign state, to full faith and credit in this state, and to warrant a recovery on same in the courts of this state, it must appear that the court rendering said judgment had jurisdiction over the person of the judgment debtor at the time of the rendition of said judgment.

"3. Where a personal judgment has been rendered in the courts of a state against a nonresident merely upon constructive service and therefore without acquiring jurisdiction over the per-

son of the defendant, such judgment will not be enforced in this state."

Also see 72 C.J.S. Process § 32; 50 C.J.S. Judgments § 893(2) (3); 42 Am.Jur., Process, Secs. 1 et seq. That this represented the universal rule of law for many years is clear.

However, it is recognized that changing conditions in recent years have provided the basis for evolvement of a rule more consonant with modern conditions and needs of a complex and highly mobil citizenery. Recognition of the problems and legislative endeavors to resolve perplexing questions first was observable in the non-resident motorist statute, which made a non-resident motorist amenable to process from a court of the forum state in order to try out issues arising from a non-resident motorist's alleged negligence.

The landmark case is Hess v. Pawloski (1927) 274 U.S. 352, 47 S.Ct. 632, 71 L. Ed. 1091, 35 A.L.R. 951. There it was determined that a Massachusetts statute providing that a non-resident's operation of a motor vehicle upon a highway of the commonwealth was deemed an appointment of a public official as service agent for the purpose of service of process in any proceeding resulting from such non-resident's operation of a motor vehicle within the state. Against the claim that the statute authorizing such process was in contravention of the Fourteenth Amendment of the Constitution, the Supreme Court found that such statute operated to require a non-resident to give implied consent to be summoned in such manner to answer for his conduct in a proceeding growing out of an accident upon the highways. And, so long as the non-resident actually received service and a copy of the process and was afforded reasonable time and opportunity to defend no requirement of due process was violated.

From this point judicial reasoning gradually was extended to encompass the problems provoked by the presence of corporate entities who carried on business in a state wherein the corporation had not seen fit to domesticate. This change became observable with the decision in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, when it was held the limits of jurisdiction were not "mechanical or quantitative", but were to be found in the requirement that provisions for vesting jurisdiction were required only to be fair, reasonable and not offending "traditional notions of fair play and substantial justice", and to give the defendant adequate notice of the claim and an adequate and realistic opportunity to appear and defend. Where these requirements are met no violation of due process occurs. And, more recently the rule was further enlarged in McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223.

From this point the normal progression of the law required consideration of the problem in the light of the necessity of amenability to process of non-resident natural persons who transact business in the forum state. This enlargement of jurisdiction by legislative enactment, to afford means of supporting in personam judgments against non-residents, is the newest and most far-reaching step. Adoption of "long-arm" statutes by the following states, including our own, typifies legislative recognition of the problem and the necessity for extending jurisdiction in order to reach non-resident individuals. Ill.Rev.Stat., 1955, Ch. 110, Secs. 16–17; Idaho Code Ann., Sec. 5–514–516 (1961 Supp.); Fla. Stat.Ann., Sec. 47.16; Kan.G.S.1961 Supp., Sec. 60–2525, et seq.; Mont.Rev.Codes Ann., Sec. 93–2702–2 (rule 4) (B) 1963; N.M.Stat.Ann., Sec. 21–3–16 (1961 Supp.); Okla., 12 O.S.Supp.1963, Sec. 187; Wash. Rev.Code, Secs. 4.28.180, 4.28.185.

As enacted originally in 1933, the Illinois statute represented the first legislative response in recognition of the problem. The New Mexico statute herein involved, is patterned closely after that of Illinois. This is also true of our own statute, supra. See Genet v. Smith, Okl., 400 P.2d 161.

■ The reasons underlying adoption of "long-arm" statutes were aptly expressed in Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673, p. 676, where that court in upholding constitutionality of the statute said:

"(4) Defendant's main contention is that the amended sections deny him due process of law, and so violate the fourteenth amendment to the constitution of the United States and section 2 of article II of the constitution of Illinois, S.H.A. Since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, was decided in 1878, significant social, technological, and legal developments have occurred. Rigid concepts have yielded to fiction, and fiction has yielded to forthright and realistic considerations of fairness in the determination of what constitutes jurisdiction to determine personal rights. Mr. Justice Holmes's observation, 'The foundation of jurisdiction is physical power, * * *.' McDonald v. Mabee, 1917, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608, can no longer be read restrictively. The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy. The limits on the exercise of jurisdiction are not 'mechanical or quantitative' (International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95), but are to be found only in the requirement that the provisions made for this purpose must be fair and reasonable in the circumstances, and must give to the defendant adequate notice of the claim against him, and an adequate and realistic opportunity to appear and be heard in his defense."

And, at p. 679, it was observed:

" * * * Clearly, as in the nonresident motorist cases that were relied on in the Doherty case, that other basis is to be found in the legitimate interest of the State in providing redress in its courts against persons who, having substantial contacts with the State, incur obligations to those entitled to the State's protection.

"(5) * * * The rational basis of the decisions upholding the nonresident motorist statutes is broad enough to include the case in which the non-resident defendant causes injury without the intervention of any particular instrumentality. The legislature may direct its policy to the fact of injury as well as to its probability. Cf. Watson v. Employers Liability Assurance Corp., 1954, 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74."

In Compania De Astral v. Boston Metals Co., 205 Md. 237, 107 A.2d 357, 108 A.2d 372, 49 A.L.R.2d 646, the Maryland Court observed:

"The non-resident motorist cases have shattered any argument to the effect that a single transaction by a non-resident may not be made the basis for amenability to suit in the state where the transaction occurred. The Doherty & Co. case [Doherty & Co. v. Goodman, 294 U.S. 623, 55 S. Ct. 553, 79 L.Ed. 1097] has rendered untenable any contention that a contract made within a state cannot serve as the basis for suit in that state against a non-resident party to the contract."

■ In Melfi v. Goodman, 64 N.M. 488, 368 P.2d 582, that court considered and determined the constitutionality of the statute involved in this appeal, specifically holding:

"1. Statute providing jurisdiction for courts of the state over a person transacting business within the state, by personal service outside the state, was not violative of the due process clause of the Fourteenth Amendment to the Federal Constitution. 1953

Comp. § 21–3–16; U.S.C.A.Const. Amend. 14.

"2. A state may constitutionally require that a resident of a foreign jurisdiction doing business within the state be subject to its jurisdiction as to a cause of action arising out of business transacted by such nonresident within the state. U.S.C.A.Const. Amend."

The conclusion reached was based squarely upon the prior construction placed upon the statute by the Illinois court. Also see Sunday v. Donovan, 16 Ill.App.2d 116, 147 N.E.2d 401; Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761.

■ The essential elements of "due process", as presently understood and applied, require only that a defendant be given notice and opportunity to be heard in an orderly manner in a proper forum. See Di Maio v. Reid, 132 N.J.L. 17, 37 A.2d 829; Herb Bannister Plbg. Co. v. Dreadin, Okl., 395 P.2d 645. Where the defendant has minimal contact with the forum state, so that maintenance of the action does not offend "traditional notions of fair play and substantial justice", and the mentioned elements are present there is no lack of due process. International Shoe Co. v. State of Washington, supra.

The remaining question arises from defendant's claim that the judgment sued upon in McCurtain County is not entitled to recognition in this State. The issue justifies discussion, even though adoption of our own "long-arm" statute might be considered as having settled the matter. Questions concerning full faith and credit of judgments of a foreign forum are neither new nor novel, having been the subject of consideration in the Articles of Confederation which declared: "Full faith and credit shall be given in each of the States to the records, acts and judicial proceedings of the courts and magistrates of every other State." Art. IV, Articles of Confederation. However, efforts to include a provision which would have permitted an action at law in any state for recovery of a debt due upon a judgment rendered by a court of another state was rejected.

In the Federal Convention of 1787 Madison desired legislation authorizing execution upon judgments from one state in the other states under expedient regulation, for the declared reason that this was justified by the very nature of the Union. Farrand, The Records of the Federal Convention, V. 2, 448. In 1790 Congress provided the manner of authenticating legislative acts and proving judicial proceedings, in order that they might be accorded full faith and credit in every court of the U. S. (Act of May 26, 1790, 1 Stat. 122). In 1804 further enactment provided for the method of exemplification of non-judicial records, and prescribed their effect. (Act of March 27, 1804, 2 Stat. 298). These Acts represent the statutory law relative to full faith and credit clause of the Constitution. 28 U.S.C. Secs. 687, 688.

The failure of Congress to follow Madison's recommendation at the time, and since, and provide for universal execution of judgments as between the different states, undoubtedly sired the practice of suing in one state upon a judgment rendered in another state. Thus, as recently as in 1941 the Supreme Court said: "Where this Court has required the state of the forum to apply the foreign law under the full faith and credit clause or under the Fourteenth Amendment, it has recognized that a state is not required to enforce a law obnoxious to its public policy." Griffin v. McCroach, 313 U.S. 498, p. 507, 61 S.Ct. 1023, p. 1027, 85 L.Ed. 1481.

■ This appeal is governed by the following rules which must be applied and which are decisive. Enactment of the statute involved was a proper matter for legislative determination as concerned a remedy or method of procedure. Cotton Club v. Oklahoma Tax Comm., 195 Okl. 403, 158 P.2d 707. No person has a vested right in any particular mode of procedure, in absence of a saving clause. Fry v.

Wolfe, 106 Okl. 289, 234 P. 191. Having no vested right in a particular mode of procedure, the defendant was bound by that which was in force and effect in New Mexico at the time he was present and engaged in business there. Thus, he was bound in every respect, unless the procedure prescribed violated the due process clause of the Constitution, or was not entitled to full faith and credit in this jurisdiction because contrary to declared public policy of this State.

In Futterman v. Gerber, (Fla.App.) 109 So.2d 575, an action was brought in a Florida civil court to collect upon an Illinois judgment based upon substituted service authorized by the same state (Ill.Civ. Practice Act, S.H.Ann., Sec. 17.) which is the source of the present appeal. The only issue involved jurisdiction of the Illinois court to render in personam judgment upon form of constructive service authorized by statute. The Florida court declared the judgment of the Illinois court was entitled to full faith and credit under the U. S. Constitution, until defendant proved the Illinois judgment was not founded upon procedural due process.

 Defendant was not deprived of due process in the New Mexico court, since it was stipulated that defendant transacted business in New Mexico, the action upon which this judgment was based was filed in a court having jurisdiction of the subject matter, and the process, issued, served and returned as required by the statute, advised defendant of the nature of plaintiffs' action and afforded him ample opportunity to appear and defend. The judgment against defendant being regular in all respects and, when properly transcripted to the state as the basis of an action, was entitled to full faith and credit in the courts of this State.

Judgment reversed and cause remanded for new trial.