183 So.2d 811 (1966)
Hale E. ROBERTS
v.
WORTHEN BANK & TRUST COMPANY.
No. 43608.
Supreme Court of Mississippi.
March 7, 1966.
*812 Stratton & Jones, Brookhaven, for appellant.
R. Pearce Phillips, Brookhaven, for appellee.
BRADY, Justice.
This is an appeal from a judgment of the Circuit Court of Lincoln County, Mississippi, against appellant in the sum of $8,050.31. The judgment was rendered on a judgment obtained in the Chancery Court of Pulaski County, Arkansas. Appellant had filed a general demurrer to appellee's declaration; the demurrer being overruled and judgment entered, appellant appeals.
The record discloses that the litigants in this cause entered into a written stipulation of facts in the Circuit Court of Lincoln County, Mississippi. It was stipulated that the facts are to be considered as alleged in the declaration. Briefly, the pertinent facts therein are as follows:
On June 15, 1962, and at all times, the appellant was a nonresident of the State of Arkansas and a resident and citizen of Brookhaven, Lincoln County, Mississippi; the appellee, Worthen Bank & Trust Company, is a banking corporation organized under the laws of Arkansas, with its principal place of business at Little Rock, Arkansas.
On June 15, 1962, the appellant, for a valuable consideration, executed and delivered to the appellee a promissory note in the amount of $29,575.80. Contemporaneously with the execution and delivery of said note, and for the purpose of securing the same, appellant executed and delivered to the appellee an aircraft chattel mortgage encumbering one 1958 Apache super custom model, two motor aeroplane. The note and chattel mortgage were executed in the city of Little Rock, Arkansas, and the chattel mortgage was duly acknowledged in the manner prescribed by law and recorded on July 9, 1962. On September 13, 1963, the above described aircraft was located in Pulaski County, Arkansas. The litigants agree that the two transactions above represent the business transacted by the appellant in the state of Arkansas, upon which jurisdiction was based in that suit which was filed by the appellee against appellant in Pulaski County, Arkansas, in which a personal decree and judgment were rendered in favor of appellee against appellant on October 31, 1963, in the sum of $20,565.11.
The jurisdiction of the Arkansas Court was asserted under Act 101 of the General Assembly of Arkansas, 3A Arkansas Statutes Annotated sections 27-2501  27-2507 (Supp. 1963), approved February 28, 1963, and referred to as the Uniform Interstate and International Procedure Act. The statute's definition of a person includes an individual, "whether or not a citizen * * * of this State * * *." The Act provides that: "A court may exercise personal jurisdiction over a person, who acts directly * * * as to a (cause of action) * * * arising from the person's (a) transacting any business in this State;" and that: "When jurisdiction over a person is based solely upon this section, only a (cause of action) * * * arising from acts enumerated *813 in this section may be asserted against him." The Act provides that: "When the exercise of personal jurisdiction is authorized by this section, service may be made outside this State * * * by any form of mail addressed to the person to be served and requiring a signed receipt." The Act further provides that: "When service is made by mail, proof of service shall include a receipt signed by the addressee or other evidence of personal delivery to the addressee satisfactory to the court."
A copy of the summons for the appellant in the suit in the Chancery Court of Pulaski County, Arkansas, together with the service and a copy of the complaint filed therein, was deposited by United States certified mail at Little Rock, Arkansas, addressed to the appellant at his post-office box address in Brookhaven, Mississippi, and was delivered to the appellant on September 16, 1963, on which date appellant signed the return receipt, which was returned to the sender in Little Rock, Arkansas, and filed with the Chancery Clerk of Pulaski County, Arkansas, together with the affidavit as to service of process upon appellant of Stanley E. Price, attorney for the appellee.
In addition to the stipulation of facts, the record further discloses that the service as required by Act 101 of the General Assembly of Arkansas, approved February 28, 1963, was in order, and that the appellant made no appearance and filed no pleadings. A default judgment was taken against appellant for the sum of $20,565.11; said judgment and decree constituted a first and prior lien on the aforesaid Apache aeroplane, which was condemned and sold by the commissioner of said court on December 12, 1963, for the sum of $14,000, the highest bid offered. On the same date, the total judgment, interest, and costs owing by appellant amounted to $22,050.31. After applying the proceeds of the sale, there remained a deficiency on said judgment of $8,050.31. On February 11, 1964, in the Chancery Court of Pulaski County, Arkansas, a deficiency judgment for said sum of $8,050.31, together with 6% interest thereon from December 12, 1963, was granted to the appellee against appellant by said court. No part of the deficiency judgment of $8,050.31 has been paid and no appeal was ever prosecuted from said deficiency judgment, which is now in full force and effect against the appellant and is past due.
Unable to collect the deficiency judgment in Arkansas, appellee filed this suit in the Circuit Court of Lincoln County, Mississippi, against appellant. The appellant filed a general demurrer to the declaration, which was overruled. Appellant declining to plead further, a judgment was entered against him in the sum of $8,050.31, with interest at 6% per annum from December 12, 1963, until paid.
Attached as Exhibit A to the stipulation of facts was a photostatic copy of the note and chattel mortgage.
The promissory note executed by the appellant on June 15, 1962, provided for the payment at the appellee's office in Little Rock, Arkansas, of $29,575.80, "in 60 consecutive monthly instalments payable on the 29th day of each month, commencing July, 1962, each of said instalments except the one last maturing to be in the sum of $492.93 * * *."
The appellant's first contention is that the Arkansas Uniform Interstate and International Procedure Act cannot be constitutionally applied to acquire personal jurisdiction over the appellant. In support thereof, appellant asserts that prior to the enactment of said statute the appellant transacted only one isolated item of business, a loan for the purchase of an airplane, in Arkansas, and that subsequent thereto the state of Arkansas passed the Act which subjected him personally to the jurisdiction of the Arkansas Court by reason of the item of business which he had already performed. The appellant urges that this did not constitute the necessary minimum contacts, and that to subject him to the jurisdiction of the Arkansas courts offends the *814 traditional notions of fair play and substantial justice in violation of the due process clause of the Constitution of the United States.
We consider the first contention of appellant, that he transacted only one isolated item of business in Arkansas. Appellant relies strongly upon the well reasoned case of Mladinich v. Kohn, 250 Miss. 138, 164 So.2d 785 (1964), in support of this point. The Mladinich case does not afford the appellant any help for the reason that factually it is not comparable to the case at bar. The Mladinich suit was brought against a resident of the state of Louisiana for a slander alleged to have been committed by his agent in making a speech in Harrison County. This Court, speaking through its present Chief Justice, W.N. Ethridge, pointed out that the defendant did no business in the state of Mississippi; that a religious association in this state had invited him to make a speech in a Baptist Church in Biloxi. His Louisiana employer did not know anything about the speech and had nothing to do with it. He received no remuneration for the speech, which he considered a civic duty and courtesy in response to the invitation. We accordingly held that the speech was an isolated, single act done with no financial gain in view and did not constitute the minimal contacts sufficient to give this state jurisdiction; that the quality and nature of his activities were inconsequential, and it would be unreasonable under these circumstances to assume jurisdiction. Chief Justice Ethridge further pointed out that the assumption of in personam jurisdiction over him would offend "traditional notions of fair play and substantial justice." In addition, appellant urges that "doing business" under the Mississippi rule to acquire jurisdiction requires the doing of a series of acts or a continuous activity, citing Century Brick Corp. of America v. Carroll, 247 Miss. 514, 153 So.2d 683 (1963); Davis-Wood Lbr. Co. v. Ladner, 210 Miss. 863, 50 So.2d 615 (1951); Mississippi Wood Preserving Co. v. Rothschild, 201 F.2d 233 (5th Cir.1953).
In the case at bar we do not have an isolated single act comparable to a church speech. We have a series of acts culminating in a loan for the purchase of an airplane costing approximately $30,000. The appellant here had a substantial connection with the state of Arkansas. He chose the state of Arkansas as the situs of the business he desired to transact. He availed himself of the benefits and protection of Arkansas law in the preparation and execution of his contracts. He negotiated and secured a substantial loan of $29,575.80 from the appellee by executing a promissory note and a chattel mortgage to evidence and secure the loan. His note provided for sixty monthly installments payable over a period of five years at appellee's office in Little Rock, Arkansas, to cover the purchase of the airplane. The injured party is a bank doing business in Arkansas, and the cause of action arises from these acts, due to the appellant's default. We hold that appellant had sufficient minimal contacts with the state of Arkansas in compliance with the rule announced in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
The Arkansas Act 101 was patterned after the provisions of the Illinois statute enacted in 1956. The decisions of the Illinois Supreme Court go much further in authorizing the entry of in personam judgments under sections 16 and 17 of the Civil Practice Act, Ill. Rev. Stat. 1965, c. 110, §§ 16, 17, than do the Mississippi cases cited by appellant, dealing with the interpretation of Mississippi Code Annotated section 1437 enacted in 1940, prior to Mississippi's amendment thereto. The Illinois statute as treated in Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957), has exactly the same language as that which is included in the Arkansas statute, namely: "The transaction of any business within this State." It is this language which must be considered in determining whether the contacts are sufficient in the case at bar. We are not concerned with section 1437, adopted in 1940, *815 as construed in the Mississippi cases cited by appellant, but are concerned with the much broader and more modern statute adopted by the state of Arkansas in 1963. Just as we did not in the Mladinich case "attempt to define a rule pertaining to state jurisdiction over a single, isolated tort committed in this state," so we do not in the case at bar pass upon the question of whether a single act, or item of business, would be sufficient to award jurisdiction. We hold, however, that just as the launching of a ship involves more than its christening just before it slides down the ways into the water, so do the acts of the appellant here constitute more minimal contacts than the signing of a note and a chattel mortgage. The minimal contacts are sufficient to justify the state of Arkansas' asserting in personam jurisdiction over the appellant.
As was pointed out in Nelson v. Miller, supra:
Mr. Justice Holmes's observation, "The foundation of jurisdiction is physical power, * * *." McDonald v. Mabee, 1917, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608, can no longer be read restrictively. The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy. The limits on the exercise of jurisdiction are not "mechanical or quantitative" (International Shoe Co. v. [State of] Washington, 1945, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95,) but are to be found only in the requirement that the provisions made for this purpose must be fair and reasonable in the circumstances, and must give to the defendant adequate notice of the claim against him, and an adequate and realistic opportunity to appear and be heard in his defense. (11 Ill.2d at 384, 143 N.E.2d at 676.)
In passing, it was pointed out in Century Brick Corporation of America v. Carroll, 247 Miss. 514, 523-524, 153 So.2d 683, 686 (1963), as follows:
Under International Shoe, to comply with due process there must be certain "minimum contracts" with the forum state, so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." However, the activities in the state should be continuous and systematic, and give rise to the obligation or liability sued upon, although one of these latter circumstances may suffice. (Emphasis added.)
While some jurisdictions have held or indicated that one single transaction of business is sufficient to justify those states in asserting in personam jurisdiction over nonresident defendants, it is unnecessary here, and we do not so hold. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Elkhart Eng'r Corp. v. Dornier Werke, 343 F.2d 861 (5th Cir.1965); Gkiafis v. Steamship Yiosonas, 342 F.2d 546 (4th Cir.1965); Wing v. Challenge Mach. Co., 23 F.R.D. 669 (S.D.Ill. 1959); Melfi v. Goodman, 69 N.M. 488, 368 P.2d 582 (1962); Old Westbury Golf & Country Club, Inc. v. Mitchell, 44 Misc.2d 687, 254 N.Y.S.2d 679 (Sup.Ct. 1964); cf. Note, 37 Miss.L.J. 177-80 (1965). Contra, Allied Finance Co. v. Prosser, 103 Ga. App. 538, 119 S.E.2d 813 (1961).
After considering the above cited cases, among others, we are not persuaded by the decision of the seventh circuit court of appeals in Trippe Mfg. Co. v. Spencer Gifts, Inc., 270 F.2d 821 (7th Cir.1959), wherein it is indicated that the McGee case is limited to the insurance field, nor do we deem it necessary to discuss, for the disposition of this case, the holding in Flexner v. Farson, 248 U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250 (1919), for the reason that it has, in substance, been practically nullified by the subsequent decisions of the United States Supreme Court. Ehrenzweig, Conflict of Laws § 33 at 118-19 (1962); Goodrich, Conflict of Laws § 73 at 128-29 (1964); *816 Leflar, Conflict of Laws § 31 (1959); Stumberg, Conflict of Laws Ch. 4 at 90-96 (1963).
There is no merit in the contention of appellant that the Arkansas statute cannot subject him personally to the jurisdiction of the Arkansas Court without violating the due process clause of the 14th Amendment to the Constitution of the United States, because the Arkansas Act was enacted subsequent to the time he borrowed the money.
The basic question here is whether or not the Arkansas statute impairs the substantive right of the appellant or is simply remedial.
In Safeway Stores, Inc. v. Shwayder Bros., Inc., 238 Ark. 768, 384 S.W.2d 473 (1964), the Arkansas Supreme Court specifically held that Act 101, being remedial only, did not affect the substantive rights of the appellee, and that service of process pursuant thereto was good even though the cause of action antedated the statute. The Supreme Court of Arkansas stated:
It is of course conceded that Act 101 was enacted some months after Chronister was injured by the alleged negligence of appellee, but it did not, in our opinion, affect any substantive rights of appellee. It was remedial only and therefore must be construed retrospectively in this case. (238 Ark. at 772, 384 S.W.2d at 476.)
There are other authorities which announce the same rule, as follows: McGee v. International Life Ins. Co., supra; Bluff Creek Oil Co. v. Green, 257 F.2d 83 (5th Cir.1958); Teague v. Damascus, 183 F. Supp. 446 (E.D.Wash. 1960); Nelson v. Miller, supra.
In the case of Nelson v. Miller, supra, an Illinois statute's new provision, which authorized the entry of in personam judgments on personal service of summons outside the state, was upheld by the Illinois Court in its application to acquire jurisdiction over a nonresident defendant personally served in Wisconsin for a tort which occurred in Illinois prior to the effective date of the statute. The United States Court of Appeals in Bluff Creek Oil Company v. Green, supra, held that the retroactive application of the Illinois statute to nonresidents served outside the state did not violate the "due process" clause of the Constitution.
In Teague v. Damascus, supra, it was urged that the service was defective because the act complained of occurred approximately ten months before the statute, under which service was made, was passed. The motion to dismiss on the ground of defective service was denied.
In view of the foregoing authorities and in view of the decision of the United States Supreme Court in the McGee case, it is apparent that there is no merit in appellant's contention that the Arkansas statute (Act 101) cannot be applied to transactions which occurred before its passage, for the reason that the statute is remedial, and neither enlarged nor impaired appellant's substantive right and obligation under his note and chattel mortgage to the appellee. All that the statute did was to afford the appellee an Arkansas forum to enforce whatever substantive rights the appellee had against the appellant, and the appellant had no vested right not to be sued in the state of Arkansas. This certainly cannot offend traditional notions of fair play and substantial justice.
In the McGee case the United States Supreme Court stated as follows:
Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. (Cases cited.) (355 U.S. at 223, 78 S.Ct. at 201, 2 L.Ed.2d at 226.)
*817 The question presented in the case at bar is not one involving the purchase of personal property, such as a suit or topcoat, by a shopper or tourist on a weekend junket in another state. Involved here, financially and legally, are business transactions of considerable magnitude, the complete fruition of which required monthly payments extending over a period of five years. The appellant could have conducted his business affairs in any state, but he purposely availed himself of the privileges afforded him by the state of Arkansas. He invoked the benefit and protection of its laws. By such election and the benefits derived from the exercise thereof, he subjected himself to the jurisdiction of the Arkansas courts in any suits arising out of his business transactions.
In the suit filed in Arkansas, the summons, together with copies of the notice and the complaint, having been served upon the appellant by registered mail forty-five days before the date of trial, gave him actual and sufficient notice thereof and afforded him ample opportunity to appear and defend. Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940); International Shoe Co. v. State of Washington, supra; McGee v. International Life Ins. Co., supra.
We hold that the State of Arkansas had substantial connection with this suit and was justified in making reasonable provisions for redress in its local courts against the appellant.
The appellant, having breached his Arkansas contract, which he elected to execute, cannot now, by crossing a state line, gain asylum in this state and escape the just liabilities of his contractual violations. To hold otherwise would offend our notions of fair play and substantial justice. The decrees rendered against appellant are entitled to full faith and credit in the State of Mississippi.
For the foregoing reasons, the judgment of the Circuit Court is affirmed.
Affirmed.
All Justices concur except GILLESPIE, P.J., who dissents, and JONES, J., who took no part.
GILLESPIE, Presiding Justice (dissenting):
This is a close case, and my area of disagreement with the majority is small.
The majority opinion recognizes that a single transaction is insufficient to subject a nonresident individual to the personal jurisdiction of the state where the transaction took place; with this, I agree. I disagree with the part of the opinion holding that the acts of appellant were a "series of acts" constituting minimal contact with the State of Arkansas so as to subject him to the personal jurisdiction of the courts of that state.
Each state has independent sovereignty with authority to make and administer the laws over persons and property within its boundaries, and reciprocal respect for such sovereignty limits one state from extending the authority of its courts into another state to subject the citizens thereof to its jurisdiction. Conn v. Whitmore, 9 Utah 2d 250, 342 P.2d 871 (1959). Of course, the right of a state where a judgment of a foreign court is sought to be enforced is limited by the full faith and credit clause of the Constitution and considerations of comity. The courts of the country, including the Supreme Court of the United States, generally have liberalized the standards for determining the minimum activities necessary to subject nonresidents to personal jurisdiction. In my opinion, these decisions have gone far enough, if not too far. Nonresidents should not be subjected to personal jurisdiction of a foreign state on the basis of a single transaction, and, in my opinion, the total transaction by appellant was essentially a single transaction. The amount involved should not be a decisive factor. It *818 is common practice for residents of this state to go in person to make purchases and borrow money beyond the limits of the state. To subject all of these people to the personal jurisdiction of the other states offends my notion of fair play and substantial justice.
I do not believe that the decisions of the Supreme Court of the United States require that we affirm this case, and I would prefer to follow the recent decisions of some of our sister states on somewhat similar transactions. In Conn v. Whitmore, supra, defendant, a resident of Illinois, had correspondence about the purchase of some horses. The purchase price apparently amounted to $1,750. The defendant sent his employee to Illinois with a trailer to pick up the horses at the plaintiff's farm in Freeport, Illinois, and deliver a check for the $750 balance. The plaintiff brought his action in Illinois under its "long arm" statute, mentioned in the majority opinion, and recovered a judgment and proceeded to bring an action on the judgment in Utah. The court in that case stated the following:
Even under the liberalized view the foregoing cases represent as to the prerequisities to holding one subject to personal jurisdiction of the courts of a foreign state, this requirement remains: there must be some substantial activity which correlates with a purpose to engage in a course of business or some continuity of activity in the state so that deeming the defendant to be present therein is founded upon a realistic basis and is not a mere fiction. That this is so and that a single act or transaction does not suffice unless it fits into the above pattern is well established. (342 P.2d at 874)
The Utah court reflected on the difficulties that would be encountered if persons were drawn into the orbit of foreign courts under certain circumstances, and stated: "* * * This would for practical purposes obliterate any protection one might have from being compelled to go to a foreign jurisdiction to defend a lawsuit. * * *"
In Allied Fin. Co. v. Prosser, 103 Ga. App. 538, 119 S.E.2d 813 (1961), the judgment sought to be enforced in Georgia against a Georgia resident had been entered in Texas in accordance with the Texas "long arm" statute. Basing its decision on the due process clause of the Fourteenth Amendment, the Georgia court declined to enforce the foreign judgment based on a single transaction done in Texas. The Georgia court stated:
* * * While the rule has understandably been stretched for reasons of public policy to include motorists statutes and insurance statutes, as in McGee v. International Life Ins. Co. [355 U.S. 220, 78 Sup.Ct. 199, 2 L.Ed.2d 223 (1957)], it is unthinkable that it should be expanded to cover the individual who enters into a single transaction with no intention of doing more. * * * (119 S.E.2d at 816)
See also Sterling Materials Co. v. McKinley, 218 Ga. 574, 129 S.E.2d 770 (1963).
It is clear that the cases of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and of McGee v. International Life Ins. Co., supra, and other later decisions, have swept away old concepts and given far greater reach of in personam jurisdiction by means of "long arm" statutes. But the United States Supreme Court recognizes that the reach is not limitless. In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the United States Supreme Court said:
* * * But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a *819 consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the `minimal contacts' with that State that are a prerequisite to its exercise of power over him. * * (357 U.S. at 251, 78 S.Ct. at 1238)
In my opinion, "traditional notions of fair play and justice" would best be served by requiring appellee to sue appellant in the courts of Mississippi.