VENTLING et al., Appellants v. KRAFT, Respondent

(161 N.W.2d 29)

(File No. 10478. Opinion filed September 16, 1968)

**Bangs, McCullen, Butler & Foye, R. D. Hurd,** Rapid City, for plaintiffs and appellants.

**Whiting, Lynn, Freiberg & Shultz, Gene N. Lebrun,** Rapid City, for defendant and respondent.

HOMEYER, Judge.

The defendant, Peter A. Kraft, a resident of North Dakota, was personally served with a summons in this action outside the state under the provisions of the "long arm statute", Ch. 163, Laws of 1965. He appeared specially and moved to quash the service. The motion was granted and this appeal followed.

The single question to be decided is whether the asserted personal jurisdiction over the defendant violated the due process clause of the Fourteenth Amendment to the Constitution of the United States.

The statute in question is patterned after the Illinois Civil Practice Act,[1] the Uniform Interstate and International Procedure Act,[2] and Acts of other states.[3] The six enumerated classes of acts in Section 2 are identical with those contained in the Montana statute.[4] The portions of the statute pertinent to this action read:

---

1. Illinois S.H.A., Ch. 110, § 17.
2. 1962 Handbook, National Conference of Commissioners on Uniform Laws, § 1.03, p. 221.
3. Wash.Rev.Code, Secs. 4.28.180, 4.28.185; Wis.Stat.Ann. Ch. 262, 262.05; Idaho Code Ann. (1961 Supp.) Sec. 5-514 to 5-516; Fla.Stat.Ann., Sec. 47.16; Kansas G.S. (1961 Supp.) Sec. 60-2525 et seq.; N.M.Stat.Ann., (1961 Supp.) Sec. 21-3-16; 12 Okl.St.Anno. Sec. 187.
4. Ch. 189, 1963 Laws of Montana amending Rule 4, M.R.C.P.

"Section 2. Subject to jurisdiction. Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally * * * of any of the following acts:

(1) the transaction of any business within the state; * * *

(3) the ownership, use, or possession of any property, or of any interest therein, situated within this state; * *

(6) acting as director, manager, trustee, or other officer of any corporation organized under the laws of, or having its principal place of business within this state, or as executor or administrator of any estate within this state."

In addition to (1) appellant urges that (3) and (6) are applicable. We find it unnecessary to consider the latter subsections in the disposition of this appeal.

Under comment[5] the Commissioners on Uniform Laws said subsection 1 was derived from the Illinois Act and should be given the same expansive interpretation intended by the draftsmen of that act and given by the courts of that state.[6] Courts in that state have said the drafters of the section intended to assert jurisdiction to the fullest extent permissible under the due process clause of the Fourteenth Amendment[7] and the restrictive interpretation based upon the old concept of "doing business" has been discarded.[8]

Five United States Supreme Court decisions, International Shoe Co. v. State of Washington (1945), 326 U.S. 310, 66 S.Ct.

---

5. 1962 Handbook, supra.
6. Berlemann v. Superior Distributing Co., 17 Ill.App.2d 522, 151 N.E.2d 116, Jenner & Tone, Historical and Practice Notes, Illinois S.H.A., Ch. 110, § 17.
7. Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673.
8. Haas v. Fancher Furniture Co., D.C., 156 F.Supp. 564. See also Uhlich v. Hilton Mobile Homes, 80 S.D. 478, 126 N.W.2d 813; Clay v. Kent Oil Co., 72 S.D. 629, 38 N.W.2d 258; Brewster v. F. C. Russell Co., 78 S.D. 129, 99 N.W.2d 42. See, however, Ch. 22, Laws of 1965, Sec. 109, para. 3.

154, 90 L.Ed. 95; Travelers Health Ass'n v. Commonwealth of Virginia (1950), 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; Perkins v. Benguet Cons. Mining Co. (1952), 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; McGee v. International Life Ins. Co. (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, and Hanson v. Denckla (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, have established loose guidelines for legislative enactment and judicial construction of "long arm" statutes now in effect in nearly each of the states. See jurisdictions listed in annotations 19 A.L.R.3d 20 and 20 A.L.R.3d 1204. Perhaps significantly, in cases either allowing or denying jurisdiction under statutory enactments since 1958 the United States Supreme Court has chosen not to interfere or pronounce more precise standards.

In the first of these cases, International Shoe Co. v. State of Washington, Justice Stone speaking for the court announced the broad framework of the future in personam jurisdiction in these words:

> "Historically the jurisdiction of courts to render judgment **in personam** is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565. But now that the **capias ad respondendum** has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment **in personam,** if he be not present within the territory of the forum, **he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'".** (Emphasis in part ours)

The test laid down in International Shoe was first applied in Travelers Health Ass'n v. Commonwealth of Virginia, supra, where the defendant was a nonprofit membership insurance association incorporated and having its only office in Nebraska. The association had no paid agents, but solicited new members

in Virginia, usually through unpaid activities of Virginia residents who were already members. Insurance certificates were delivered through the mail and the association investigated benefit claims in Virginia. In an injunction proceeding under a Virginia regulatory statute, defendant was served by registered mail and the contacts of the association were held sufficient to sustain jurisdiction. The court in concluding that the standard of fair play and substantial justice had been met emphasized the interest of the state in having the insurer faithfully comply with its certificate obligation, the systematic and wide delivery of certificates after solicitation, the inconvenience of the certificate holder in reaching the insurer elsewhere, and the availability of the state courts to the insurer.

In McGee v. International Life Ins. Co., supra, the court had before it a single contract of insurance, solicited by mail and serviced in the forum state by an out-of-state insurance company. In sustaining jurisdiction, the court said:

> "In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations. See Henderson, The Position of Foreign Corporations in American Constitutional Law, c. V. More recently in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the Court decided that 'due process requires only that in order to subject a defendant to a judgment **in personam,** if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' "   *   *   *

> "Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. **It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection**

**with that State.** (Cases cited). The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims." (Emphasis ours)

In Perkins v. Benguet Cons. Mining Co., supra, where the cause of action arose from activities entirely distinct from its activities in Ohio, the court said the business of the corporation done in Ohio was sufficiently substantial and of such a nature as to **permit** Ohio to entertain a cause of action against a foreign corporation. While federal due process did not compel the state to open its courts, neither did it prohibit it.

In Hanson v. Denckla, supra, the court took note of the trend of expanding personal jurisdiction over nonresidents:

"As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of Pennoyer v. Neff * * * to the flexible standard of International Shoe Co. v. State of Washington * *. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him.

        *        *        *        *        *        *

. "The cause of action in this case is not one that

arises out of an act done or **transaction consummated** in the forum State. In that respect, it differs from McGee v. International Life Ins. Co.  *  *  *

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, **but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws.** International Shoe Co. v. State of Washington." (Emphasis ours)

Some courts in the consideration of the matter and in passing on similarly worded statutes have said three rules can be drawn from a combined reading of the foregoing cases against which future litigation of a like nature may be tested.[9] These rules are: (1) The nonresident defendant must purposefully do some act or consummate some transaction in the forum state. A single event will suffice if its effects within the state are substantial enough to qualify under Rule 3.[10] (2) The cause of action

10. Byham v. The Nat'l Cibo House Corp., 265 N.C. 50, 143 S.E.2d 225.

must be one which arises out of, or results from, the activities of the defendant within the forum. Conceivably a cause of action might come to fruition in another state, but because of the activities of defendant in the forum state there would still be a "substantial minimum contact." (3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice. In the determination of the latter, consideration should be given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded to the respective parties, and the basic equities of the situation.

9. L. D. Reeder Contractors of Arizona v. Higgins Industries, 9 Cir., 265 F.2d 768 (footnote 12); Tyee Const. Co. v. Dulien Steel Products, Inc., 62 Wash.2d 106, 381 P.2d 245; Callahan v. Keystone Fireworks Manufacturing Co., Wash., 435 P.2d 626.

The first requirement is essentially that set out in subsection 1 of Section 2 of the statute, i. e., "the transaction of any business within the state". Likewise, the second requirement merely expresses the limitation of the statute, i. e., "any cause of action arising from the doing * * * any of the following acts." The third requirement is not based on the statute, but appears to be an attempt to enumerate some factual considerations which may be weighed by the court in determining whether a nonresident's constitutional right to due process of law has been ignored.

As stated supra the five Supreme Court cases to which we have alluded establish only general and not precise guidelines on what constitutes "due process of law". Perhaps purposely they do no more. Courts have sometimes attempted to categorize factors emerging from these and other cases as either primary or secondary, but essentially it is a question of fundamental fairness. See Aftanase v. Economy Baler Company (1965), 8 Cir., 343 F.2d 187 and Fisher Governor Co. v. Superior Court, 53 Cal.2d 222, 1 Cal.Rptr. 1, 347 P.2d 1. The amount and kind of activity which must be carried on in the forum state to subject a foreign corporation or nonresident individual to the jurisdiction of that state are to be determined in each case. Perkins v. Benguet Mining Company, supra.

From a sketchy record it appears that plaintiffs were the owners of all of the stock of the Southern Hills Lumber Company, Inc., a South Dakota corporation, consisting of 900 shares. On May 9, 1964, defendant and four other individuals as trustees contracted to purchase from them this stock for $74,403.83 of which sum $5,945.00 had been paid by the buyers before formal execution of the contract and $4,805.00 was paid simultaneously with the execution of the contract. The remaining balance of $64,653.83 was payable with interest at 6% per annum as follows: $5,000 on October 7, 1964 and $5,000 on April 7, 1965 and like sums on October 7th and April 7th of each subsequent year until paid in full. Accrued interest was payable with installments of principal. The instant suit is to recover two installments and interest.

The sales agreement contained a provision for delivery of the stock certificates in escrow to the National Bank of Newcastle, Newcastle, Wyoming,[11] there to remain pending full compliance with the terms of the agreement. It authorized redelivery at the option of the sellers in case of a default in payments. It also directed simultaneous issuance of certificates for 900 shares of common stock of a par value of $100 per share to the buyers as trustees, likewise to be held in escrow. The trustees were granted full voting rights of all corporate stock except the agreement permitted surrender and reissuance of stock certificates with accompanying voting rights to individual beneficiaries pending full performance. The reissued stock was required to be deposited with the escrow agent subject to other terms of the agreement. Listed in the agreement are 32 persons for whom the stock is held in trust in amounts varying from 2 to 32 shares. The buyers as stockholders or officers covenanted to refrain from issuance of additional shares pending compliance with the agreement. It contained a provision that it would be binding upon approval of the Board of Directors of the Corporation as thereafter constituted.

Appended to the Agreement is an "Approval" by the corporation executed by defendant as president and attested by B. W. Meier as secretary who also appears to be one of the trustees. The approval is dated June 1, 1964 and recites that at a special meeting held on that date the corporation by appropriate resolution approved the stock sales agreement insofar as obligations of the corporation are therein set forth.

The pertinent record consists of the complaint with a copy of the agreement attached, an amended complaint, an affidavit of the defendant, and two affidavits by plaintiff's counsel. It is admitted that the defendant is a resident of North Dakota and that he executed the contract in South Dakota. It also appears that the Southern Hills Lumber Company, Inc., has its principal place of business at Custer, South Dakota, and that it has no offices outside South Dakota. That it was a closely owned

---

11. Weston County, of which New Castle, Wyoming is the county seat, and Custer County, of which Custer, South Dakota is the county seat, are adjoining counties.

corporation and by virtue of the sales agreement the buyers acquired and were vested with complete ownership and the power to manage and operate the corporation and its assets conditioned upon payment of the purchase price consideration upon the terms set forth therein.

■ The language of Ch. 163, Laws of 1965, appears to be designed to gain the fullest benefits from the United States Supreme Court cases supra in which the due process requirements under the Federal Constitution have been relaxed as they pertain to personal jurisdiction in civil actions. We believe the legislature by enacting the "long arm" statute intended to provide South Dakota residents with maximum protection of South Dakota courts from damages and injuries occasioned them through the acts or omissions, both contractual and tortious, of a nonresident when that nonresident has had the necessary minimal contacts with the state to comply with federal due process. In general this has been the accepted construction by state courts of similar "long arm" statutes. See Annot., 20 A.L.R.3d 1204.

Jurisdiction has been constitutionally sustained over nonresidents in the following cases, sometimes based on a single act, contract or transaction, and sometimes supplemented by other contacts: Simms v. Hobbs (1966), Okl., 411 P.2d 503 (contract executed in forum involving sale of motel in forum; at same time "earnest money" check was executed and delivered in escrow); Slivka v. Hackley (1967), Mo., 418 S.W.2d 89 (negotiations in forum on purchase of trotting horse). This case refuses to follow and attempts to distinguish, Conn v. Whitmore (1959), 9 Utah2d 250, 342 P.2d 871; Kropp Forge Co. v. Jawitz (1962), 37 Ill.App.2d 475, 186 N.E.2d 76 (negotiations for contract conducted by correspondence after which time the defendant entered forum to inspect object of contract); Hamilton Natl. Bank of Chattanooga v. Russell (1966), D.C.Tenn., 261 F.Supp. 145 (note was not executed in forum, but was delivered to payee and made payable in forum); McKanna v. Edgar (1964), Tex.Civ. App., 380 S.W.2d 889 (execution of note payable in forum); Compania De Astral, S. A. v. Boston Metals Co. (1954), 205 Md. 237,

107 A.2d 357, 108 A.2d 372, 49 A.L.R.2d 646, cert. den. 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738 (jurisdiction upheld on execution of contract within forum); Roberts v. Worthen Bank & Trust Co. (1966), Miss., 183 So.2d 811, 20 A.L.R.3d 1190 (execution·of note and chattel mortgage in forum; however, court found some other contacts).

Under a single act statute[12] similar to Chapter 163, the New York court, Steele v. De Leeuw, 40 Misc.2d 807, 244 N.Y.S.2d 96, held that the signing of a contract and transfer of stock pursuant to the contract were sufficient contacts within the state to constitute a "transaction of business" within the state where the action is based on the contract. The McGee case is cited. To the same effect is Patrick Ellam, Inc. v. Nieves, 41 Misc.2d 186, 245 N.Y.S.2d 545. In Iroquois Gas Corporation v. Collins, 42 Misc.2d 632, 248 N.Y.S.2d 494, the court wrote: "Certainly where a contract is made in this state and a cause of action arises out of such contract, the consummation of the contract in New York constitutes the transaction of business or the minimum contacts necessary to invoke personal jurisdiction."

Defendant and the contract which he executed had a substantial connection with the State of South Dakota. He elected to transact business in South Dakota by consummating and executing such contract therein through which complete ownership of a South Dakota business was acquired and by which plaintiffs were divested of all interest in such business except as its corporate stock secured the unpaid purchase price. He availed himself of the protection and benefit of South Dakota law by executing the contract in South Dakota. The cause of action arises from defendant's default on such contract. All or a substantial part of the down payment of the purchase price consideration was paid in South Dakota. He became an officer of a South Dakota corporation as a result of such contract and performed corporate acts. The contract through its grant of all

12. Civil Practice Law and Rules, McKinney's Cons.Laws of N.Y., Ann., Book 7B, § 302(a). Joseph M. McLaughlin in his "Practice Commentary" on page 430 states: "There can no longer be any serious doubt that the transaction of business within the state is a sufficient predicate for personal jurisdiction at least as to causes of action arising out of that business."

voting rights placed in defendant and his co-buyers the complete power to manage and operate the South Dakota business. We hold that defendant transacted business in South Dakota and had sufficient minimal contacts with South Dakota to satisfy federal due process, thus invoking the jurisdiction of its courts.

Respondent has argued that the test of "minimum contacts" is more stringent when applied to a nonresident individual than it is when applied to a foreign corporation. Some courts have so held. Allied Finance Co. v. Prosser, 103 Ga.App. 538, 119 S.E.2d 813. On the other hand most courts have refused to make a distinction. Compania De Astral, S. A. v. Boston Metals Co., supra; J. W. Sparks & Co. v. Gallos (1966), 47 N.J. 295, 220 A.2d 673; Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673; Owens v. Superior Court of Los Angeles County, 52 Cal.2d 822, 345 P.2d 921, 78 A.L.R.2d 388. In Owens, the court said: "The rationale of the International Shoe case is not limited to foreign corporations, and both its language and the cases sustaining jurisdiction over nonresident motorists make clear that the minimum contacts test for jurisdiction applies to individuals as well as foreign corporations." Chapter 163 under definitions specifically includes an individual.

Argument is also made that jurisdiction in single act cases should be confined to those in which the state has a special regulatory interest such as insurance, securities,[13] and like activities. Although McGee v. International Life Ins. Co., supra, was an insurance contract case the court did not so limit its application: "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connections with that State."[14] Courts generally have not confined McGee to insurance or similarly regulated business contracts. See Roberts v. Worthen Bank & Trust Co., supra, and cases therein cited.

The case is reversed and remanded for further proceedings.

All the Judges concur.

---

13. Annotation 20 A.L.R.3d, Sec. 6, p. 1235.
14. Maryland Nat'l Bank v. Shaffer Stores Co., D.C., 240 F.Supp. 777.

BIEGELMEIER, Judge (concurring).

The courts of North Dakota, the state of his residence, or any other state where defendant would be served personally with process would acquire jurisdiction. The court here concludes sufficient contacts exist to confer a constitutionally permissible jurisdiction to support substituted service of process with which I agree, Wyoming might reach a similar conclusion. Because jurisdiction of one transaction may be asserted by several states, courts must exercise caution in applying this expanding doctrine.