**Paul BLUM, an individual, and Airlite Plastics Company, a corporation, Plaintiffs,**

v.

**KAWAGUCHI, LTD., a limited partnership, and Toyomenka, Inc., a corporation, Defendants.**

**Civ. No. 71-0-192.**

United States District Court,
D. Nebraska.

Aug. 20, 1971.

William J. Riedmann, of Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for plaintiffs.

Stephen Olson, and John Boyer, of Fraser, Stryker, Marshall & Veach, Omaha, Neb., for Kawaguchi, Ltd.

John R. Douglas, of Cassem, Tierney, Adams & Henatsch, Omaha, Neb , for Toyomenka, Inc.

## MEMORANDUM AND ORDER

ROBINSON, Chief Judge.

This matter comes before the Court upon defendant's [Kawaguchi, Ltd] motion to dismiss or in lieu thereof to quash the return of service of summons. [Filing #11].

According to the pleadings and defendants' answers and interrogatories a Kawaguchi KS 350-27 Plastic Injection Molding Machine, Serial No. 3392 was manufactured by defendant Kawaguchi, Ltd. and shipped from Japan on March 25, 1969, for sale to defendant Toyomenka, Inc. and was shipped directly from Los Angeles to plaintiff Airlite Plastics Company in Omaha, Nebraska. Although the shipment was direct, defendant Toyomenka, Inc. first sold said machine to Machine Sales, Inc., 8410 K Street, Omaha, Nebraska, not a party to this action. Machine Sales, Inc. then sold it to plaintiff Airlite Plastics Company.

According to the plaintiffs' complaint an employee of plaintiff, Airlite Plastics Company, Inc. suffered a guillotine traumatic amputation of his left forearm while operating said machine. The employee, Paul Blum, is a co-plaintiff and prays for judgment in the amount of $242,880. Plaintiff, Airlite Plastics Company, is a party on the basis of subrogation due to payments made pursuant to the Nebraska Workmen's Compensation Act.

The plaintiffs allege in the complaint that the injuries were inflicted by the Kawaguchi KS 350-27 Injection Machine because of defective design and construction which existed from the time of its origin; that both defendants knew or had reason to know the particular purpose for which said machine was to be used but that the machine was not free from defects nor fit for the intended purpose; that defendant, Kawaguchi, Ltd. was negligent in failing to exercise ordinary care in the design, manufacture and inspection of said machine; and that defendant Toyomenka, Inc. was negligent in failing to inspect and warn the plaintiff of the dangers of said machine.

Defendant Toyomenka has answered [Filing #6] and only defendant, Kawaguchi, Ltd. is connected with the pending motion.

██ Defendant, Kawaguchi, Ltd. asserts it has not been properly served with process of this action under the provisions as set out in Nebraska Statute R.R.S. §§ 25-535 to 25-541 [Supp.1969]. § 25-540 is pertinent and provides in part:

"[1] When the law of this state authorizes service outside this state, the service, when reasonably calculated to give actual notice, may be made: * * * [c] By any form of mail addressed to the person to be served and requiring a signed receipt * * *."

A copy of the Complaint, summons and Interrogatories were sent by registered mail to defendant Kawaguchi at its Tokyo, Japan office [Filing #4]. This clearly satisfies the statutory requirements.

██ The inquiry must now be directed to whether defendant Kawaguchi, Ltd. was properly subject to service of process. There are two standards to be considered, federal and state.

Mr. Justice Blackmun, then Circuit Judge, stated in Aftanase v. Economy

Baler Company, 343 F.2d 187, 189–190 [8th Cir. 1965]:

"This court has already observed and held, and recently, that whether due process requirements have been met, so far as jurisdiction in a diversity case over a foreign corporation is concerned, is a question of federal law; that the 'more recent federal cases have greatly relaxed the due process limitations on personal jurisdiction'; that if a foreign corporation's business activity in a state is sufficiently extensive by federal standards it is amenable to suit there so far as federal law is concerned, and even upon a cause of action arising outside the state; that the state, however, may impose limitations, beyond those of due process, upon a foreign corporation's amenability to suit in her courts; and that a federal court sitting in a state should observe these further limitations * * *."

Several recent decisions have held that federal due process and state requirements were satisfied under nearly parallel factual situations. In Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231 [9th Cir. 1969] the defendant, Duple Motor Bodies, Ltd., manufactured coach bodies, shipped the product to another manufacturer who shipped the completed vehicle to a Hawaii dealer who then sold to an Hawaii Tour concern. The bus overturned and the roof caved in due to the alleged negligent manufacture, and the plaintiff, apparently a passenger, brought suit. The Court stated:

"In our judgment the presence of Duple's Coach bodies in Hawaii, brought about by Duple's sale to Vauxhall with knowledge that the product was destined for Hawaii, was sufficient contact with Hawaii to meet the requirements of due process. * * * If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product [if it occurs] would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade."

Another recent case, Benn v. Linden Crane Co., 326 F.Supp. 995 [E.D.Penn. 1971] held that extension of jurisdiction over a Swedish Corporation would not violate due process when the Swedish manufacturer "indirectly" sold a crane to a Pennsylvania concern and the product allegedly caused injuries due to a malfunction caused by negligent manufacturing. The Court in part stated:

"[E]conomic and business reasons dictate that goods will pass through any number of people in a distributive chain before they reach the ultimate consumer. It is the movement of goods through this distributive chain that in this case constitutes an 'indirect shipment'. Linden-Alimak [def] manufactured and sold a crane f. o. b. Swedish port to a purchaser [also a co-defendant] * * * Linden-Alimak had reason to know that the crane would be resold for ultimate use and operation in the United States."

The parallel factual situation of the present action also supports a conclusion that the machinery was shipped "indirectly" with the knowledge that the machinery would be resold for use in the United States, and that federal standards are satisfied.

The question now is whether the Nebraska long-arm statute in question has imposed more stringent requirements than the federal standards under the present circumstances.

R.R.S.Neb. 1943 [1969 Am.Supp.] § 25–536 provides:

"Jurisdiction over a person. [1] A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

[a] Transacting any business in this state;

[b] Contracting to supply services or things in this state;

[c] Causing tortious injury by an act or omission in this state;

[d] Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

[e] Having an interest in, using, or possessing real property in this state; or

[f] Contracting to insure any person, property, or risk located within this state at the time of contracting.

■ When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."

Defendant argues Peterson v. U-Haul Co., 409 F.2d 1174 [8th Cir. 1969] recognized two requirements inherent in the Nebraska Long-Arm Statute: [1] actual presence in the state plus [2] regular or persistent course of conduct, and that plaintiff has not shown either requirement to be present. Defendant is correct on all contentions but this Court no longer necessarily views Peterson v. U-Haul Co., *supra,* as controlling. The Court there was placed in the very difficult role of determining state law without the benefit of authoritative pronouncements from the Nebraska Supreme Court in regard to the Nebraska Long-Arm Statute.

In the opinion of Peterson v. U-Haul Co., *supra,* it was stated at page 1177:

"Federal court decisions in diversity cases have no precedential value as state law and only determine the issues between the parties."

This Court does not interpret that to mean that the decision would not be followed in the federal courts if there had been no subsequent Nebraska state decisions on the subject, but the Nebraska Supreme Court has expressed itself since Peterson v. U-Haul Co. was decided.

Stucky v. Stucky, 186 Neb. 636, 185 N.W.2d 656 [1971] provides a significant interpretation. The Nebraska Supreme Court noted that:

"Older cases generally denied personal jurisdiction over a nondomiciliary of the forum state unless service of summons was made within the jurisdiction. Since International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 [1945] the doctrine of minimum contracts has been adopted in many states. Nebraska's statutory version was adopted in 1967. See, sections 25–535 to 25–541, R.S.Supp., 1969."

The Court then quoted Section 25–536 and followed:

"While that language does not cover divorce in specific words, it indicates clearly the legislative intention to apply the minimum contacts rule where it does not offend traditional concepts of fair play and substantial justice."

The defendant has cited another Nebraska case, Conner v. Southern, 186 Neb. 164, 181 N.W.2d 446 [1970] but that case appears to stand for the proposition that there must be some contact with Nebraska by the defendant. The defendant there was not even indirectly connected since the defendant resided in Ohio and was to perform work in Pennsylvania. This is readily distinguishable from the present action because the delivery, installation, operation and alleged injury resulting from the machine occurred in Nebraska. The Court also notes that other states have taken a broad view of their long-arm statutes and that if the Nebraska statute was narrowly construed this would place Nebraska citizens in the position of being subject to the jurisdiction of other states while unable to assert jurisdiction in a Nebraska forum for the very same event. For example, *see* Atkins v. Jones & Laughlin Steel Corp., 258 Minn. 571, 104 N.W.2d 888 [1960]; Ventling v. Kraft, 83 S.D. 465, 161 N.W.2d 29 [1968]; Zerbel v. H. L. Federman & Co., 48 Wis.2d 54, 179 N.W.2d 872 [1970]; Tice v. Wilmington Chemical Corp., 259 Iowa 27, 141 N.W.2d 616 [1966].

A discussion of the history and construction of the Nebraska statute in

question is found in Carroll v. General Medical Company, 53 F.R.D. 349 [D. Neb.1971] wherein the Court noted the "liberalized approach" of the Nebraska Legislature. This Court also concludes that the Nebraska Long-Arm Statute § 25–535 et seq. would not be read narrowly and strictly by the Nebraska Courts but would be given a broad interpretation consistent with the philosophy underlying the adoption of a long-arm statute.

With such an approach the Court concludes that service of process is authorized either by section [a] "transacting any business in this state," or section [b] "contracting to supply services or things in this state." It is true that all contacts and relations with Nebraska appear to be indirect in that the sale was made through intermediate entities, that defendant Kawaguchi, Ltd. is not alleged to have an agent within Nebraska, nor to be licensed to do business in Nebraska. The only direct connection thus far apparently is found in defendant Kawaguchi's answer to interrogatories wherein it answered that one of its employees was concerned with the installation of the particular piece of machinery involved in this litigation. But the statute in question does not require that contacts be direct. It is a fair statement that a sale of machinery would be classified a transaction of business in Nebraska and it does not follow that an indirect sale would necessarily alter the nature of the transaction. It might be a different situation had the defendant made a sale elsewhere with the expectation that it was to be a final sale [that is, not for resale]. Such is not the case here.

It also follows that there was a contract to provide things in Nebraska in the indirect sense. It may be that section [d] also applies because it would be a fair inference that the sale of a piece of industrial equipment would generate substantial revenue. The exact price is not available at this stage and the Court does not need to reach a decision on this point.

The Court further notes that the issues in the present action are *directly* related to the piece of machinery sold. It is not as though a plaintiff was attempting to predicate jurisdiction over a defendant on a single sale for issues unrelated to the item sold.

There is one additional consideration. The defendant has also moved to dismiss on the grounds that the action is in the wrong district. The Court finds this contention to be without merit. *See* Seilon, Inc. v. Bremä, 271 F.Supp. 516 [N.D. Ohio 1967]. Accordingly,

It is ordered that defendant's [Kawaguchi, Ltd.] motion to dismiss the action or in lieu thereof to quash the return of service [Filing #11] should be and is overruled.

It is further ordered that defendant [Kawaguchi, Ltd.] serve an answer within ten [10] days after notice of this Memorandum and Order.