**GENERAL LEISURE PRODUCTS CORPORATION, a Corporation, Plaintiff,**

v.

**GLEASON CORPORATION, a Corporation, Defendant.**

Civ. 71–0–216.

United States District Court,
D. Nebraska.

Sept. 10, 1971.

Warren S. Zweiback, of Zweiback & Laughlin, Omaha, Neb., for plaintiff.

Leo Eisenstatt, of Eisenstatt, Higgins, Kinnamon & Green, Omaha, Neb., for defendant.

## MEMORANDUM AND ORDER

RICHARD E. ROBINSON, Chief Judge.

This matter comes before the Court upon defendant's motion to dismiss [Filing #6] or in lieu thereof to quash the return of service of summons on the grounds that the defendant is not subject to service of process within the District of Nebraska and that the defendant has not been properly served with process.

According to the affidavit of Mark L. Laughlin [Filing #3] a copy of the summons and complaint were mailed to defendant Gleason Corporation at its usual place of business at 2266 North Prospect Avenue, Milwaukee, Wisconsin, 53202, attention of the President, A. L. Kotler, by certified mail, return receipt requested. The return receipt is attached to the affidavit.

Both sides have assisted with briefs, oral arguments, and affidavits. The issues generally defined are whether the defendant is amenable to service pursuant to Nebraska's Long-Arm Statute, Neb.R.R.S. § 25–536, et seq. [1969 C.S.] and if so whether due process is offended by service under the present facts of this action.

The long-arm statute has been the subject of several recent Memorandums of this District and the subject of a recent Nebraska Supreme Court opinion. *See* Joedman v. Gamble-Skogmo, Civil #1747–L [D.Neb.1971]; Carroll v. General Medical Company, 53 F.R.D. 349 [D.Neb.1971]; Blum v. Kawaguchi, Ltd., 331 F.Supp. 216 [D. Neb.1971] and Stucky v. Stucky, 186 Neb. 636, 185 N.W.2d 656 [1971]. As a general statement it has been decided that the Nebraska long-arm statute is to be interpreted broadly in view of the rationale and philosophy underlying the adoption of the long-arm statute, and not narrowly and strictly. This recent development has placed the application of the cases cited by the defendant in a different light. The Court will not reiterate the reasoning but refers instead

to the above-cited cases and notes that neither "presence" nor "doing business" are the pertinent tests to be employed under Nebraska's long-arm statute.

The plaintiff's complaint alleges that the defendant entered into contracts with the plaintiff to supply wheels to be used on mini-bikes, but failed to perform the contracts and that the plaintiff as a result was damaged in the sum of $350,000.00.

Defendant's contacts with Nebraska appear as follows per defendant's sales manager's [F. James Perse] affidavit [Filing #14]—From 1969 to 1970 defendant's sales manager made six trips to General [plaintiff] in Nebraska, 2 for the purpose of acquainting plaintiff with defendant's line of and facilities for wheel products and 4 to collect past due receivables.

According to this affidavit the defendant also sold go-cart wheels to Sensation Mfg. Company of Ralston, Nebraska, [not a party]. These sales, made between 1969 and 1971, totaled $27,475.20.

The plaintiff's affidavits assert that the total amount of sales made by the defendant to the plaintiff over the past three years totaled $459,847.50. This figure is not challenged. [Filing #11.]

According to a preliminary prospectus of the defendant attached to the affidavit of David Koentopf [president of the plaintiff] [filing #12] defendant is "a diversified manufacturer deriving its income from the marketing of wheels and casters, outdoor leisure and recreation products, shopping and special purpose carts, highway vehicle safety equipment and miscellaneous products and services. It markets its products through its own sales force and through individuals and organizations acting as manufacturers' representatives to over five thousand customers, including wholesalers, retail chain stores and approximately 400 original equipment manufacturers."

According to the defendant all the business done with the plaintiff was based on purchase orders sent by United States mail to the defendant and were accepted in defendant's Milwaukee office. All the orders, past and present, were for delivery F.O.B. defendants' manufacturing plant at Fort Madison, Iowa, and were shipped from there pursuant to the plaintiff's directions. [Filing #6.] According to the affidavit of plaintiff's manager some deliveries were made to the plaintiff in Omaha, Nebraska, on defendant's truck. In answer the defendant states deliveries were made to accommodate the plaintiff and plaintiff paid the expenses. [Filing #13.]

The defendant places stress on the F.O.B. terms but these distinctions are of no importance under the long-arm statute. Neither physical presence or doing business are required. The products in the past were shipped directly from the defendant via an intermediate entity of the defendant to the plaintiff in Nebraska. This Court has recently held that even an indirect shipment [via a third-party] constituted both a transaction of business in Nebraska and constituted a contract to supply things in Nebraska. In other words when a product is placed in a distributive chain with the destination Nebraska then the requirements of § 25-536 "transacting any business in the state" or § 25-536 (1) [b] "contracting to supply services or things in this state" are met. Blum v. Kawaguchi, Ltd., *supra*. Shipping and freight arrangements do not alter the character of the event, and the point at which title passes is not determinative.

Even if the point where title passed was of importance it appears that there is a strong argument title did not pass until the products arrived in Nebraska. The defendant has provided two of the plaintiff's orders sent to the defendant. [Filing #6.] The purchase orders provide that the orders are subject to several conditions, including among these are:

"3. Any provisions for payment of transportation charges relate to the price only and have no effect on the time of passage of title. Until we shall have inspected the merchandise and thereafter accepted it, delivery

thereof shall not be completed nor shall title thereto pass to us; the acceptance of the merchandise by us shall not release or discharge you from legal liability in damages or otherwise for breach of any obligation or warranty, expressed or implied, with respect to the merchandise ordered hereunder.

"4. This order is given by us and accepted by you upon the condition that you will protect and hold us harmless against any and all liability and indemnify us for any loss or expense arising out of any patent, copyright, trade mark or trade name infringement action, now existing or hereafter commenced, in relation to the goods hereby ordered or any part thereof.

"5. The filling of this order by you is an acceptance of the terms and conditions here stated and stated on the face hereof and shall not be qualified by anything appearing on the invoice.

"6. It is understood and agreed that the merchandise described in this order is hereby warranted by you to be free from any and all defects, that the different articles have been manufactured in a good, workmanlike manner and of good material, and that the merchandise is suitable for the normal purpose for which it is intended, and that you shall hold us harmless for any and all claims and expenses that may arise out of the breach of any obligation or warranty expressed or implied with respect to the merchandise ordered hereunder."

The defendant has not shown nor argued that the acceptance of the orders was expressly "made conditional on assent to the additional or different terms." R.R.S.Neb. § 2–207 [1]. Thus it appears that the F.O.B. designation is without importance even under the defendant's argument, but the Court reserves decision on this aspect because the resolution is not determinative or necessary.

The defendant has also argued that Federal Constitutional standards of due process would be violated if the defendant's acts are considered to be within § 25–536, and states it does not have any distributors, warehouses, places of business, sales representatives or employees in the State of Nebraska, and all dealings in Nebraska were as previously described. [Filing #6.]

The Court is not persuaded that due process would be violated under the facts of this case.

The defendant and the plaintiff have a history of past transactions totaling over $400,000 and at least one other business connection with another Nebraska firm.

The defendant has also stated that at least two trips were made by the defendant to Nebraska "for the purpose of acquainting General [plaintiff] with Gleason's [defendant] line of facilities for wheel products. * * *" [Filing #14.] The number of trips is not of great importance but the nature and purpose is important as it reveals an active solicitation of sales.

The defendant also sent its prospectus directly to the plaintiff's president, [Filing #12] which is significant because it reveals a positive effort to promote sales. This is clearly not the case of a corporation passively accepting an order at its place of business in one state and then finding itself subject to suit in another state for breach of contract for that solitary event.

Golden Belt Manufacturing Company v. Janler Plastic Mold Corporation, 281 F.Supp. 368 [N.D.N.C.1967] affirmed 391 F.2d 266 [4th Cir. 1968] cited by the defendant is distinguishable in that the only contact with the forum state was that of the contract upon which the suit was based. Due process has even been upheld on such a single transaction. See McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 [1957]. Dahlberg Co. v. American Sound Products, Inc., 179 F.Supp. 928 [D.Minn.1959] cited by the defendant is also distinguishable. There the plaintiff

attempted to predicate jurisdiction on a transaction between the defendants and third-parties of which the volume was less than $2,500.00 in one year, and upon the visit of one of the defendant's agents at a time previous to the defendant's employment of that agent. The situation is so unlike the present action that it is not determinative. Perlmutter v. Standard Roofing & Tinsmith Supply Co., 43 Misc.2d 885, 252 N.Y.S.2d 583 [1964] cited by the defendant is of no precedential value in this action.

On the other hand the opinion of Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365 [8th Cir. 1969] involved a very similar factual situation and held due process was not violated. There a Minnesota corporation negotiated by mail and phone with a Texas manufacturer, mailed the order from Minnesota and the equipment was shipped directly to Minnesota F.O.B. Texas. The Court quotes a portion of that opinion and notes that parts of the analysis could almost be applied without change to this action:

"We turn to the due process question. The answer to it depends upon whether the defendant's contacts with Minnesota were such that 'the maintenance of the suit [in Minnesota] does not offend "traditional notions of fair play and substantial justice."' International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 [1945]. In Aftanase, [Aftanase Economy Baler Co., 8th Cir., 343 F.2d 187] supra, we outlined five factors to be considered in determining whether the fair play and substantial justice requirements were satisfied: [1] the nature and quality of the contacts with the forum state; [2] the quantity of contacts with the forum state; [3] the relation of the cause of action to the contacts; [4] the interest of the forum state in providing a forum for its residents; and [5] the convenience to the parties. A consideration of these factors convinces us that the exercise of jurisdiction was consistent with constitutional requirements.

"[1 & 2] The quality and the quantity of the contacts were such as to satisfy the requirements.

"[a]. The defendant purposely availed itself of the privilege of doing business with a Minnesota resident. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 [1958]. It entered into a transaction having an impact on the commerce of that state. By so doing, it invoked the benefit and protection of Minnesota's laws and could reasonably have anticipated that its act would have consequences in Minnesota. The fact that no agents of the defendant entered the state is not controlling. Southern Machine Company v. Mohasco Industries, Inc., 401 F.2d 374 [6th Cir. 1968].

"[b] While the plaintiff initiated negotiations with the defendant, the defendant actively and voluntarily participated in them thereafter. Southern Machine Company v. Mohasco Industries, Inc. supra; Shealy v. Challenger Manufacturing Company, 304 F.2d 102, 104 [4th Cir. 1962].

[c] While the contract was consummated in Texas, contractual consequences were reasonably anticipated in Minnesota.

[d] While the equipment was Shipped F.O.B. Texas, the defendant made arrangements for the shipment and knew that the equipment was being shipped directly to a Minnesota resident without passing through an intervening dealer.

"[e] While the defendant structured the transaction so as to be able to secure payment at a Texas bank without maintaining an action in Minnesota for the price, he could have used the Minnesota courts to obtain payment, particularly if the

plaintiff had received but failed to acknowledge receipt of the shipment in Minnesota.

"[f]   The defendant made full use of the arteries of interstate commerce to complete the contract.  Interstate mail, telephone and trucking facilities were used by the defendant in completing the transaction.  In addition, interstate banking facilities, including those of a New York bank, were used in setting up the payment procedures.  Thus, it can hardly be said that the transaction from a practical point of view was a Texas one.

"[g]   The transaction was a significant one involving the sale and shipment of 278 units over a period of twenty-one days.  The value of the units exceeded $132,000.

"[3]   The cause of action clearly arose out of the defendant's contacts with the Minnesota resident.

"[4 & 5]   The interest of Minnesota in providing a forum for its resident under the circumstances of this case is obvious.  The convenience of the parties does not appear to be a material consideration and is not urged as such by the parties."

The defendant here has argued that inconvenience should be a factor tipping the scales in its favor.  But the Court can foresee no appreciable hardship in this action if it is brought in Nebraska.

It appears from a complete reading and consideration of the present record that service of process was proper in all respects.  Accordingly,

It is ordered that defendant's motion to dismiss or in lieu thereof to quash service [Filing #6] should be and is hereby overruled.

It is further ordered that the defendant shall have ten [10] days from the filing hereof to serve a responsive pleading.