AARON FERER & SONS CO., Debtor and Debtor in Possession, Plaintiff,

v.

ATLAS SCRAP IRON & METAL CO., Defendant.

AARON FERER & SONS CO., Debtor and Debtor in Possession, Plaintiff,

v.

AMERICAN COMPRESSED STEEL CO., Defendant.

AARON FERER & SONS CO., Debtor and Debtor in Possession, Plaintiff,

v.

BECKER METALS CORP., Defendant.

AARON FERER & SONS CO., Debtor and Debtor in Possession, Plaintiff,

v.

COPALCO INTERNATIONAL CO., Defendant.

AARON FERER & SONS CO., Debtor and Debtor in Possession, Plaintiff,

v.

SITKIN SMELTING & REFINING CO., Defendant.

AARON FERER & SONS CO., Debtor and Debtor in Possession, Plaintiff,

v.

WIMCO METALS, INC., Defendant.

Civ. Nos. 76–0–138, 76–0–143, 76–0–141, 76–0–137, 76–0–139 and 76–0–160.

United States District Court, D. Nebraska.

Aug. 24, 1976.

 

Robert J. Murray, Omaha, Neb., for plaintiff.

Maureen E. McGrath and Steven Spitz, Omaha, Neb., for defendant, Copalco.

J. Leonard Schermer, St. Louis, Mo., and Irving B. Epstein, Omaha, Neb., for defendants, Atlas and Becker.

Thomas J. Flaherty, Omaha, Neb., for defendants, Sitkin and American Comp. Steel.

Eugene L. Pieper, Omaha, Neb., for defendant, Wimco.

## MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court upon the motions of defendants to dismiss for lack of personal jurisdiction subsequent to the submission of briefs and oral argument before the Court on July 30, 1976. The cases have been consolidated for decision of the issues presented by the defendants' motions.

Plaintiff, Aaron Ferer & Sons Co., a Nebraska corporation, debtor and debtor in possession, brought these actions under Sections 60, 67 and 70 of the Bankruptcy Act, 11 U.S.C. §§ 96, 107, 110, alleging that it purchased from each defendant certain metal goods which were to be shipped to a customer or customers of plaintiff. Plaintiff further alleges that defendants, within four months of plaintiff's filing of Chapter XI bankruptcy, and while plaintiff was insolvent, stopped shipment of the goods, or reclaimed them, or wrongfully collected proceeds thereby constituting a transfer made or suffered by plaintiff to or for the benefit of one of its unsecured creditors, for or on account of an antecedent debt, operating as a preferential transfer. In additional counts, plaintiff bases causes of action upon § 67(d)(2)(a) of the Bankruptcy Act, 11 U.S.C. § 107(d)(2)(a); §§ 64(a), 67 (c)(1)(A)(B) and 342 of the Bankruptcy Act, 11 U.S.C. §§ 104(a), 107(c)(1)(A), (B) and 742; § 70(e) of the Bankruptcy Act, 11 U.S.C. § 110(e); § 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c); and breach of con-

tract. Plaintiff prays that the transfer of the goods be declared null and void and that defendants be directed to reconvey the goods to plaintiff or, if the goods have been converted, that plaintiff be awarded the sale proceeds or judgment.

Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1334 and §§ 23, 60(b), 67(e) and 70(e)(3) of the Bankruptcy Act, 11 U.S.C. §§ 46, 96(b), 107(e) and 110(e)(3).

## LONG ARM STATUTE

Plaintiff attempts to invoke personal jurisdiction over each defendant pursuant to Neb.Rev.Stat. § 25–536(1)(a) and (d) (Cum. Supp.1974):

> Jurisdiction over a person. (1) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (a) Transacting any business in this state;
>
> (b) Contracting to supply services or things in this state;
>
> (c) Causing tortious injury by an act or omission in this state;
>
> (d) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (e) Having an interest in, using, or possessing real property in this state; or
>
> (f) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

## JURISDICTIONAL FACTS

### Copalco International Company

All of the purchase contracts which are the subject of the complaint filed by Ferer against defendant, Copalco International Company (hereinafter referred to as Copalco), a Michigan corporation, were executed by Copalco in the State of Michigan. Each contract concerns metal sold by Copalco in Michigan for delivery to destinations outside of the State of Nebraska. John W. Barth, one of the partners of Copalco, testified by affidavit as follows:

> [S]ales of metal that are or have been made by Copalco International Co. to Aaron Ferer & Sons Company are initiated by phone calls made by Aaron Ferer & Sons Company to Copalco in Michigan for the purpose of placing orders for the purchase of various quantities of metal from Copalco for shipment to destinations outside of Nebraska. To the best of Affiant's knowledge, Copalco does not and has not originated contact with Ferer in Nebraska to solicit Ferer to purchase its goods. [Filing # 6].

The affidavit of Margaret Buckalew, Vice-President of Administration of Ferer, reflects that Ferer and Copalco had engaged in a continuous course of business dealings for a period of over one year totaling approximately $1,000,000.00. A typical transaction between Ferer and Copalco would be initiated by telephone. Contracts were usually prepared in Nebraska and sent to defendant and signed at defendant's place of business.

### Atlas Scrap Iron & Metal Company

All of the purchase contracts which are the subject of the complaint filed by Ferer against defendant, Atlas Scrap Iron & Metal Co. (hereinafter referred to as Atlas), a Texas corporation, were executed by Atlas in the State of Texas. Each contract concerns metal sold by Atlas in Texas for delivery outside the State of Nebraska. Joseph B. Eisenberg, President of Atlas, testified by affidavit as follows:

> 4. The purchase order in question came into existence by a phone call initiated by plaintiff in Nebraska to Atlas in Texas.
>
> 5. None of the orders which plaintiff has attached to its affidavit were to

be performed, either directly or indirectly, in Nebraska. None of the goods purchased were ever located in Nebraska, nor were such goods ever to pass through, come to rest, or be delivered in Nebraska.

. . . . .

8. All witnesses, evidence and relevant information which Atlas would need to defend itself in this action are located in Texas and it would impose an immense hardship, burden and expense on Atlas if it were made to defend this action in Nebraska.

The affidavit of Margaret M. Buckalew, Vice-President of Administration of Ferer, reflects that Ferer and Atlas had engaged in a continuous course of business for approximately two years prior to April 24, 1974, totaling approximately $500,000.00.

*Sitkin Smelting & Refining Company*

All of the purchase contracts which are the subject of the complaint filed by Ferer against defendant, Sitkin Smelting & Refining Co. (hereinafter referred to as Sitkin), a Pennsylvania corporation, were executed by Sitkin in Pennsylvania. Each contract concerns metal sold by Sitkin in Pennsylvania for delivery to destinations outside of the State of Nebraska. Robert B. Thompson, controller of Sitkin, testified by affidavit as follows:

2. That I have diligently searched and studied said books and records of the corporation and find that in all dealings with plaintiff herein, Sitkin Smelting & Refining acted as a broker, shipping materials to Baltimore, Maryland; Waterbury, Connecticut; Reading, Pennsylvania but not to Nebraska.

3. That I have searched the records of Sitkin Smelting & Refining, Inc., and find that in all instances Sitkin did no actual business in Nebraska other than sending billings to Aaron Ferer, plaintiff herein.

The affidavit of Margaret Buckalew, Vice-President of Administration of Ferer, reflects that Ferer and Sitkin had engaged in a continuous course of business dealings for a period of at least two years prior to Ferer's filing its Chapter XI petition on April 24, 1974. In July of 1974, Sitkin commenced a lawsuit in the United States District Court for the District of Nebraska against the United States National Bank of Omaha, to resolve a dispute between itself and the bank relating to the transaction in this lawsuit.

*Becker Metals Corporation*

All of the purchase contracts which are the subject of the complaint filed by Ferer against defendant, Becker Metals Corp. (hereinafter referred to as Becker), a Missouri corporation, were executed by Becker in the State of Missouri. Each contract concerns metal sold by Becker in Missouri for delivery to destinations outside the State of Nebraska. Stanley Plocker, an officer of Becker, testified by affidavit as follows:

3. Plaintiff Ferer's Affidavit is correct in its statements that all of the orders attached as Exhibits, including Exhibit R–5 were prepared by Plaintiff Ferer in the State of Nebraska and mailed to Defendant Becker in the State of Missouri. These contractual offers then became final upon acceptance by Defendant Becker in the State of Missouri.

. . . . .

5. None of the orders or contracts which Plaintiff Ferer has attached to its Affidavit were to be performed, either directly or indirectly, in the State of Nebraska. None of the goods purchased were ever located in the State of Nebraska, nor were such goods ever to pass through, come to rest, or to be delivered in the State of Nebraska.

. . . . .

8. All witnesses, evidence and relevant information which Defendant Becker would need to defend itself in this action are located in St. Louis, Missouri, and it would impose an immense hardship, burden and expense on Defendant Becker if it were made

to defend this action in the State of Nebraska.

The affidavit of Margaret M. Buckalew, Vice-President of Administration of Ferer, reflects that Ferer and Becker had engaged in a continuous course of business dealings for a period of five years totaling approximately $500,000.00.

## American Compressed Steel Company

All of the contracts which are the subject of the complaint filed by Ferer against defendant, American Compressed Steel Co. (hereinafter referred to as American), a Missouri corporation, were executed by American in the State of Missouri. However, American not only sold metal to Ferer, but also purchased metal from Ferer. Philip Byer, management consultant to American, testified in affidavit as follows:

Metal clips must be baled preparatory to delivery to a steel mill. Because Ferer did not have the necessary equipment to bale metal clips, it sold metal clips to ACS (American) who in turn processed them for consumption by a steel mill. The amount of clips shipped to ACS has seldom exceeded four or five carloads per month. Each month ACS called Ferer and quoted a price ACS would pay for metal clips. If Ferer desired to sell metal clips at that price, it would subsequently notify ACS of the amount of metal clips it desired to ship to ACS and issue a sales contract to ACS who in turn executed it and returned it to Ferer. Ferer would then ship the metal clips to ACS pursuant to the sales contract.

Margaret Buckalew, Vice-President of Administration of Ferer, testified by affidavit as follows:

7. On or about November 11, 1972, Ferer negotiated Sales Contract No. 2029 . . . with the Defendant, which provided for the purchase by the Defendant of the metal material described in Contract No. 2029. . .

8. On or about December 12, 1972, Ferer negotiated Sales Contract No. 2273 . . . with the Defendant, which provided for the purchase by the Defendant of the metal material described in Contract No. 2273. . .

9. On or about May 30, 1973, Ferer negotiated Sales Contract No. 2988 . . . with the Defendant, which provided for the purchase by the Defendant of metal material described in Contract No. 2988. . . .

The affidavit of Margaret Buckalew further reflects that Ferer and American have engaged in a continuous course of business for at least the past 15 years.

## Wimco Metals, Inc.

All of the purchase contracts which are the subject of the complaint filed by Ferer against defendant, Wimco Metals, Inc. (hereinafter referred to as Wimco), a Pennsylvania corporation, were executed by Wimco in Pennsylvania. Each contract concerns metal sold by Wimco in Pennsylvania for delivery outside the State of Nebraska. Leonard Gross, secretary and treasurer of Wimco, testified in affidavit as follows:

An unsolicited order for the said material [subject of this lawsuit] . . . was directed by Aaron Ferer & Sons Co. to Wimco Metals, Inc. at its office at 401 Penn Avenue, Pittsburgh, Pennsylvania 15221. Pursuant to the said order, the subject material was to be delivered by Wimco Metals, Inc. to Aaron Ferer & Sons Co. f. o. b. Bell, California. At no time, either prior or subsequent to the issuance by Aaron Ferer & Sons Co. of the said order, did Wimco Metals, Inc. cause or allow any material made the subject of the said order to be shipped into the State of Nebraska or within the jurisdiction of the United States District Court for the District of Nebraska. To the contrary, any material made the subject of this lawsuit has, at all relevant times, been located outside of the State of Nebraska and without the jurisdiction of the United States District Court for the District of Nebraska.

Bernard Werner, Executive Vice-President of Wimco, testified by affidavit that

his communications concerning the order for the metal which is the subject of this lawsuit were directed to the New York office of plaintiff.

Margaret Buckalew, Vice-President of Administration of Ferer, reflects that Wimco and Ferer had engaged in a continuous course of business dealings for a period of over one year prior to plaintiff's filing of its Chapter XI petition on April 24, 1974, totaling in excess of $500,000.00.

## MINIMUM CONTACT THEORY

■ When a plaintiff seeks to bring a defendant into court under a long-arm statute, he must state sufficient facts in the complaint to invoke jurisdiction. Once jurisdiction has been denied, plaintiff has the burden of proving such facts. *Block Industries v. DHJ Industries, Inc.,* 495 F.2d 256 (8th Cir. 1974); *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir. 1973).[1]

■ Amenability to extra-territorial personal jurisdiction is a question of due process. A defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This Court has previously held that Nebraska's Long Arm Statute is as broad as the constitutional standard of due process. *Vergara v. Aeroflot "Soviet Airlines,"* 390 F.Supp. 1266 (D.Neb.1975). *See also Morton Buildings of Neb., Inc. v. Morton Buildings, Inc.,* 333 F.Supp. 187 (D.Neb.1971); *Von Seggern v. Saikin,* 187 Neb. 315, 189 N.W.2d 512 (1971).

■ In the Eighth Circuit, personal jurisdiction under long-arm statutes must meet due process requirements governed by the following guidelines: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the

forum state; (3) the relation of the cause of action to the forum state; (4) the interest of the forum state in providing a forum for its residents; (5) the convenience of the parties. *Electro-Craft Corp. v. Maxwell Electronics Corp.,* 417 F.2d 365, 368 (8th Cir. 1969).

■ Plaintiff attempts to prove the transaction of business in Nebraska by relying upon numerous letters and telephone communications between the parties as a continuous course of business. Although reliance is placed on *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court distinguishes *McGee* upon the interest of the state in protecting residents insured by out-of-state insurance companies.

■ The facts surrounding the purchase contracts show that the contracts were executed outside the State of Nebraska and that the contracts were not performed in any part in Nebraska. Plaintiff argues that the transactions which are the subject of these lawsuits are day-to-day occurrences in the metal trading industry and that to foreclose Nebraska as a forum would ignore the realities of its business activities and compel it to pursue defendants in a foreign jurisdiction. The argument is misplaced. Although fair play and substantial justice are the touchstone for personal jurisdiction, the inconvenience of plaintiff is only one factor to consider. Plaintiff has not introduced any evidence of where its potential witnesses reside and it does not appear that the contract law of Nebraska would apply to these transactions.[2] Jurisdiction requires contact with the forum state rather than simply contact with the resident. The Court holds that where the contract is executed outside the forum by a non-resident seller who does not transact or solicit business in the forum, and where the goods are destined for shipment to states other than the forum state, the fact that plaintiff is a Nebraska resident is insufficient to satisfy

---

1. Although plaintiff has failed to allege personal jurisdictional facts in its complaints, in the event plaintiff proves personal jurisdiction, the Court shall grant plaintiff leave of Court to amend its complaints pursuant to Rule 15(a), Fed.R.Civ.P.

2. Plaintiff has declined the Court's invitation to pursue discovery of jurisdictional facts.

traditional notions of fair play and substantial justice. The use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process.

Plaintiff's reliance on *American Beef Packers, Inc. v. Lee Food Packing Company, Inc.*, Civ. No. 76–0–51 (D.Neb. June 11, 1976) is misplaced. Although plaintiff argues that notwithstanding a trip to Omaha by the defendants the contracts were similar to the cases at bar, had it not been for the trip to Omaha to discuss credit arrangements and other business matters, the Court would have been unable to find personal jurisdiction.[3] One does not sufficiently invoke the benefits and protection of state law by simply communicating through the mails and by telephone. Defendants, with the possible exception of American Compressed Steel Company, have not engaged in the solicitation, delivery of goods or payment in Nebraska, nor have the subject transactions had any impact on the commerce of this State.

Despite plaintiff's failure to prove sufficient facts at this time, personal jurisdiction over American Compressed Steel Company may exist. American Compressed Steel Company, in addition to pursuing the similar course of business to the other defendants, also bought metal clips from Aaron Ferer. The Court, in fairness to plaintiff, will allow plaintiff an additional fifteen (15) days to develop facts surrounding these and related transactions. Particularly relevant is the point of departure for the shipments in question.

Orders are filed contemporaneously herewith in accordance with this Memorandum Opinion.

---

**3.** While the Court recognizes that physical presence is not required for personal jurisdiction, *General Leisure Products Corp. v. Gleason Corp.*, 331 F.Supp. 278, 279 (D.Neb.1971), where physical presence is absent its functional equivalent should be present. Personal jurisdiction can only be determined by weighing facts and circumstances on a case-by-case basis.