*Northern District*

## No. 8331

## RONALD J. HERISKO
## v.
## INTERNATIONAL BUSINESS COMMUNICATION CORPORATION
## RICHARD MARSH
## GARY BOVIA, d/b/a
## ATTACHE MOBILE TELEPHONE CO.
## AND INTEGRATED SYSTEMS TECHNOLOGY

Argued: May 15, 1975; Decided: Sept. 28, 1976

Case tried to *Sherman, J.,* in the Third District Court of Eastern Middlesex. No. 2210 of 1973.

Present: Flaschner, P.J.*; Forte, Gould, J.J.

**Gould, J.** This is an action in contract for breach of warranty on a mobile telephone set purchased by the plaintiff from various named local defendants and manufactured by the defendant Integrated Systems Technology, Inc. (Integrated) a foreign corporation having its usual place of business in Garland, Texas, and the plaintiff seeks to recover the purchase-price of the telephone set.

The defendant Integrated was duly served pursuant to the Massachusetts Long-arm Statute, Massachusetts G.L. c. 223 A, and following service it filed an answer in abatement alleging in substance that it does not do business in the Commonwealth of Massachusetts.

Interrogatories to the defendant Integrated were filed in order to establish whether or not it in fact was doing business within the Commonwealth as defined by the Long-arm Statute. Answers were filed by it.

The court sustained the plea in abatement finding that it did not conduct business in the Commonwealth and the plaintiff claims to be aggrieved thereby.

The defendant Integrated entered into a distributor agreement with Attache Telephone of New England, (Attache) in which agreement the defendant Integrated describing itself as a manufacturer of certain communication products, appointed Attache as a distributor with an exclusive right to purchase and to distribute the Integrated's products within certain counties of Massachusetts. The agreement was to run for an original period of one year, with automatic

---

* Note: Judge Franklin N. Flaschner was a member of the Panel hearing this matter; however, Judge Flaschner died before this Opinion was completed. He did, however, concur in the Finding.

renewal rights on compliance with the terms and conditions of the agreement. On the signing of this agreement the distributor Attache placed an initial purchase commitment of thirty units which were scheduled for delivery over a specified period of time. The agreement specifically recited that the distributor was to remain an independent contractor and not an agent or employee of the company, nor was the distributor given any rights to commit, bind or obligate the Integrated. It further specified that all material was to be shipped F. O. B. Garland, Texas, and that the Integrated's responsibility ended at the shipment's point of origin. There was a further clause in the distributor's agreement for the Integrated's warranty and the manner of performance thereby.

Other portions of the agreement pertained to local advertising by the distributor with the requirement that Integrated was to approve all advertising other than the use of its own advertising copy and layout, and there were additional clauses pertaining to the distributor's training in the Integrated's equipment, as well as termination rights and a restrictive covenant for dealing in its equipment, within a territorial area.

In the answers to interrogatories, the Integrated admitted entering into the distributorship contract and that it did ship two telephone units, as well as accessory materials, one to Attache, and the other to Attache Mobile Telephone of New England.

The answers further indicated that one of the two units was repaired by the Integrated at some period of time, and was updated with engineering and then returned.

The answers further indicated that even though the distributor agreement was signed by Attache, Serial Model No. 0787, was first sold to Attache Mobile Telephone Company, October 31, 1972, and Serial Model No. 1101 was sold to Attache, March 8, 1973.

This was the unit which had been repaired. Each of these corporations, even though there was a similarity of names, had a different mailing address. The discrepancy of the designation of the receiver of one of the shipments and the entity to which Model No. 0787 was sold was not explained in the report.

The answers further indicated that advertising material was forwarded by the Integrated both to Attache, as well as to Attache Mobile Telephone of New England, at various times.

The issue of whether or not there were sufficient minimal contacts in the activities of the Integrated, necessary to confer jurisdiction under the Massachusetts Long-arm Statute, was well discussed in the case of *"Automatic" Sprinkler Corporation of America v. Seneca Foods Corporation,* 361 Mass. 441.

In that case, the court conformed to a decision of *International Shoe Company v. Washington,* 326 U. S. 310, 316 (1945) concerning the expansion of jurisdiction over the person beyond traditional bounds of territorial sovereignty. The United States Court there said, that due process requires only that in order to subject the defendant to a judgment in personam, if he be not present within the territory of the forum, that he must have certain minimum contacts within such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. *Hanson v. Denckla,* 357 U. S. 235, 253 (1958).

In the "Automatic" case, the contacts consisted of the defendant's signing of a purchase order; the mailing of it by the defendant's agent from New York to

Worcester, Massachusetts; the receipt by the defendant of the plaintiff's invoice mailed from the Worcester division, as well as another letter acknowledging and accepting the defendant's purchase order, and the defendant's direct payment by mail of the amount due in partial payment of the purchase price. These were the only contacts the defendant had with Massachusetts, and the court held that these were insufficient to make the defendant subject to the Massachusetts Long-arm Statute, indicating that the impact upon commerce in Massachusetts was slight and that the defendant did not purposefully avail itself of the privilege of conducting activities within the foreign state.

*Morgan v. Heckle,* 171 F. Supp. 482 (1959) deals with the Illinois Long-arm Statute which is comparable to the Massachusetts statute. The court held in that case that the defendant's contacts with Illinois, receipt of a telephone call from plaintiff's agent in Illinois and shipment of the goods contracted for, C. O. D., to Anna, Illinois, were insufficient to warrant personal jurisdiction.

The decision in the *"Automatic"* case is not relevant to the present case. In *"Automatic"*, a company doing business in Massachusetts, purported to sue a non-resident purchaser. In the present case a Massachusetts purchaser is suing a non-resident company. The general philosophy of the Long-arm Statute appears to protect a state's resident when a non-resident comes in and solicits sales or directly or indirectly sells to its consumers. The State has an interest in extending its jurisdiction, consistently with due process, to protect its citizen-purchasers. The non-resident is the aggressor or the initiator, and it is appropriate that such a non-resident seller ought to respond to service of process in that state. *McQuay, Inc. v. Samuel Schlosberg, Inc.,* 321 F. Supp. 902, 906 (D. C. Minn. 1971).

In contrast to *"Automatic"*, a recent case decided by the Appellate Division of the District Courts is relevant to the present question. In that case, *Houlberg Iron, Inc. v. North American Industries, Inc.*, 26 LEGAL-ITE 268 60 Mass. App. Dec. — the plaintiff brought suit upon a California judgment rendered against the defendant, a company doing business in Somerville, Massachusetts. The Appellate Division upheld the California judgment despite the fact that the Massachusetts defendant's sole contact with California was in connection with the instant transaction, which was the shipment of one crane part to the California plaintiff.

In the California case the contacts were the placing of an advertisement in a trade magazine with a national circulation which would include the forum state, the mailing of its catalog to California, and the selling of the bridge crane part to the plaintiff with knowledge that it was to be used in California.

The distinctions between that case and the instant case are not major, and if anything, the contacts of, the defendant, Integrated, in Massachusetts, are greater than those of the Massachusetts defendant in California in *Houlberg.*

In the instant case the defendant's intent and conduct was to have its product distributed in Massachusetts. It accepted receipts of orders from Massachusetts; it allowed delivery of its products into Massachusetts, and extended its warranty to the products as they were used in Massachusetts. They also sought to regulate the advertising, the mailing of brochures and other manners of advertising its property, even to the extent of giving allowances for the same. This would appear to constitute a willful intent on the part of the Integrated to avail itself of the privilege of having its products distributed within the forum state, and it involves such contacts that the maintenance of the action would not offend traditional notions of fair play and substantial justice.

Various jurisdictions have been unpersuaded by shipment of the products F. O. B. point of shipment.

In *General Leisure Products Corp. v. Gleason Corp.,* 331 F. Supp. 278 (D. C. Neb. 1971) the court stated that at page 281:

> "The defendant places stress on the F. O. B. terms, but these distinctions are of no importance under the Long-arm Statute. Shipping and freight arrangements do not alter the character of the event, and the point at which title passes is not determinative of jurisdiction."

*"Houlberg"* is consistent with the modern view of Long-arm jurisdiction as expressed in *Hanson v. Denckla,* 357 U. S. 235. When a manufacturer consciously seeks to make a profit from selling his goods in another state, regardless of how he may disguise what he is doing, he should be subject to the jurisdiction of that other state. This is the underlying basis of the expansion of modern Long-arm jurisdiction, and was anticipated in an often-cited Harvard Law Review article: Development in the Law, State-Court jurisdiction, 73 Harvard Review 909.

Long-arm statutes are expressions of a legislative attempt to create a new basis of jurisdiction which, within constitutional limitations, will afford the citizens of a state a forum for causes of action arising from the activities of non-residents within the state. These statutes codify a new type of personal jurisdiction based on activities which are deemed more relevant than mere physical presence of a defendant or his agent in a state. As long as constitutional limits are not crossed, a court should interpret the statute to effectuate a State's legitimate desire to protect its citizens. *deLeo v. Childs,* 304 F. Supp. 593 (D. Mass. 1969).

Taking the evidence as contained in the report, it would clearly support a finding that Integrated was transacting business in this Commonwealth. The trial

justice, however, found to the contrary. The Rule of Appellate Procedure is that the findings of a trial justice will not be disturbed by the reviewing court if they can be supported by any reasonable view of the evidence with all inferences which can sensibly be drawn from that evidence. However, in the light of the fact that this was an action taken on a plea of abatement, it would appear that there was ample evidence to allow the matter to be prosecuted in the local forum, and for this reason the order of the trial justice is reversed. Prejudicial error is found, and the case is ordered back to the originating court for trial.